**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

TAMPA BAY STUDENTS FOR A
DEMOCRACTIC SOCIETY et al.,

     Plaintiffs.

v.

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES et al.,

     Defendants.

Case No. 8:25-cv-02752-SDM-AAS

**PLAINTIFFS' TIME SENSITIVE MOTION FOR A
PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................1

I.     THE FACTS .......................................................................2

II.    ARGUMENT .......................................................................7

     A.    The Standard ............................................................7

     B.    Plaintiffs Are Substantially Likely to Prove a Violation of their
        Expressive Rights Under the CAFE Act.....................................7

          1.  Substantive Law Under the CAFE Act.......................7
          2.  Procedural Relief Under the CAFE Act .....................9

     C.    Plaintiffs are Substantially Likely to Prove a Violation of
        Their Free Speech, Assembly and Association Rights Under
        42 U.S.C. § 1983.......................................................10

          1.  Individual Defendants In Their Official Capacity Are Suable
              Under § 1983 ................................................10
          2.  The Ongoing Ban on Defendants' Speech, Assembly, and
              Association in Public Forums Violates the First
              Amendment ....................................................10
          3.  The Ban on Any Organization with "Similar Members and
              Purpose" to TBSDS is an Impermissible Prior Restraint That
              Violates the First Amendment ...............................13
          4.  The Curfew and Tabling Restrictions are Unconstitutional
              Because they Grant Defendants Unbridled Discretion and
              are Not Narrowly Tailored .................................15
          5.  Plaintiffs' Suspensions and Expulsions were Imposed
              Without Due Process Since Plaintiffs were Barred from
              Consulting with Each Other to Prepare a Defense...............17
          6.  The Discipline Imposed was Viewpoint Driven
              at Every Step .................................................18

     D.    Plaintiffs Will Suffer Irreparable Harm Absent a
        Preliminary Injunction..............................................21

     E.    The Threatened Injury to Plaintiffs Outweighs Any Damage
        the Proposed Injunction May Cause Defendants and the
        Injunction Would not be Adverse to the Public Interest............22

III.   A NOMINAL BOND IS REQUIRED AT MOST ...........................22

IV.    CONCLUSION ..................................................................22

# TABLE OF AUTHORITIES

## Cases

*Aptive Env't, LLC v. Town of Castle Rock, Colorado,* 959 F.3d 961 (10th Cir. 2020) ......17

*Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666 (1998)................................12

*BellSouth Telecomm., Inc. v. MCImetro Access*, 425 F.3d 964 (11th Cir. 2005)..............22

*Bloedorn v. Grube*, 631 F.3d 1218 (11th Cir. 2011)....................................................16

*Christian Legal Soc. v. U. of Cal., Hastings. of L. v. Martinez*, 561 U.S. 661 (2010)........14

*City of Watseka v. Illinois Pub. Action Council*, 796 F.2d 1547 (7th Cir. 1986)..............16

*Cook v. Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313 (11th Cir. 2005) ...............................18

*Doe v. Texas Christian Univ.*, 601 F. Supp. 3d 78 (N.D. Tex. 2022) ...........................22

*Elrod v. Burns*, 427 U.S. 347 (1976) .......................................................................21

*Ethicon, Inc. v. Angelini*, 687 F. App'x 859 (11th Cir. 2017) .........................................3

*Fed. Trade Comm'n v. E.M. Sys. & Servs*, 2015 WL 13709807 (M.D. Fla. June 17, 2015)...........................................................................................................................3

*Frisby v. Schultz*, 487 U.S. 474 (1988) .....................................................................12

*Grizzle v. Kemp*, 634 F.3d 1314 (11th Cir. 2011)........................................................10

*Healy v. James*, 408 U.S. 169 (1972) ................................................................. 13, 14

*KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, (11th Cir. 2006) ............... 21, 22

*Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750 (1988) ........................................15

*LIH ex rel. LH v. New York City Bd. of Educ.*, 103 F. Supp. 2d 658 (E.D.N.Y. 2000)...22

*McCabe v. Sharrett*, 12 F.3d 1558 (11th Cir. 1994)....................................................11

*McDonough v. Garcia*, 116 F.4th 1319 (11th Cir. 2024)....................................... 12, 14

*Naples Pride, Inc. v. City of Naples*, No. 2:25-CV-291-JES-KCD, 2025 WL 1370174...22

*Occupy Fort Myers v. City of Fort Myers*, 882 F.Supp.2d 1320 (M.D. Fla. 2011) .... 11, 21

*Ohio Citizen Action v. City of Englewood*, 671 F.3d 564 (6th Cir. 2012)........................16

*Osterback v. Scott*, 782 F. App'x 856 (11th Cir. 2019)................................................10

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37 (1983) ...................... 11, 12

*Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819 (1995) ........... 9, 12, 15

*Sheets v. City of Punta Gorda, Fla.*, 415 F. Supp. 3d 1115 (M.D. Fla. 2019)...............15

*Socialist Workers Party v. Leahy*, 145 F.3d 1240 (11th Cir. 1998) ..............................10

*Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022) .................................18

*Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799 (11th Cir. 2020) .............................16

*Trigo v. City of Doral*, 663 F.App'x 871 (11th Cir. 2016).............................................11

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ..................................................16

*Yoseph v. Sec'y, Dep't of Corr.*, No. 25-10113, 2025 WL 2366445 (11th Cir. Aug. 14, 2025)...........................................................................................................................7

## Statutes

42 U.S.C. § 1983.......................................................................................................10

Fla. Stat. § 1004.097(3) (2018) .................................................................... 8, 9, 11

## I.    INTRODUCTION

In places Florida law explicitly recognizes as "traditional public forums" for "free speech activities", the University of South Florida, its employees and officials (collectively "USF") purport to bar Tampa Bay Students for a Democratic Society and its members (collectively "TBSDS"), from associating, assembling and speaking, in violation of the First Amendment, the Due Process Clause, and the Florida Free Expression on Campus Act ("CAFE Act").  Pursuant to written policy, USF even bans its students from "continu[ing] to function under a new name but with similar members and purpose", even as a non-student organization, even in USF's public forums.  USF punishes those associating with TBSDS in public forums with  arbitrary and selectively enforced disciplinary sanctions—including the expulsion of Plaintiff Hinckley, suspension of Plaintiff Tong, and interim suspension of Plaintiff Indawala— and threatened trespass arrests for those who are not students.  Plaintiffs seek relief to stay further enforcement of these patently unconstitutional bans on their expressive conduct.  Plaintiffs bring this "time sensitive" motion pursuant to Local Rule 3.01(e) because they are losing access to their education at a vital time of their lives, and their free speech and associational rights are daily being squelched at a time they feel morally compelled to speak out.  They thus respectfully request an expedited briefing schedule and, because they are required to request a specific decision date by the Local Rules, a decision on the request for a preliminary injunction by January 2, 2026.

Plaintiffs' applications also rest on the systematic viewpoint-discriminatory campaign USF has waged to drive TBSDS' vital messages of support for Palestinians

and for DEI from campus.  Every stage of this campaign involved viewpoint motivated, unwarranted, or disproportionate sanctions.  This ban on any organization "with similar members and purpose" to TBSDS' advocacy for marginalized communities could not more clearly offend the First Amendment.

Plaintiffs seek an order restoring them to good standing and ending Defendants' restrictions on speech in their public forums.

## I.    THE FACTS[1]

Plaintiffs are a student organization and three of its individual members. TBSDS has been a registered student organization at USF for more than a decade. Since at least 2014, TBSDS has been involved in Palestine solidarity and human rights activism on the USF campus.  Since October 2023, TBSDS and its members have been among the most outspoken organizations and individuals in support of Palestinian students on campus and the rights of them and their families.

On January 9, 2024, Defendants received a complaint by someone who claimed to be a "Liaison" to the off-campus groups "End Jew Hatred" and "Mothers Against Anti-Semitism on Campus."[2] *Exhibit 1*, McDonald Emails.  The Outside Agitator cc'd the "head of the Hillel on Campus", complaining that because of pro-Palestine fliers posted on campus, "[unidentified] Jewish students do not feel safe on USF campus"

---

[1]  For brevity, further detail may be contained in the Amended Complaint, *Document 14;* unless otherwise indicated, references to paragraphs refer to the Amended Complaint.

[2]  To be clear, TBSDS has long included Jewish members, and Plaintiffs vehemently oppose antisemitism, harbor no "Jew Hatred", and do not view support for Palestinian rights as incompatible with the rights of Jewish students.  Commitment to equal rights for all—including Jewish students—is part of what drives them to advocate for DEI and for Palestinian human rights.

and threatening a Title VI Civil Rights complaint. *Id.* The flyers contained the TBSDS logo, children flying a Palestinian flag from a bombed-out building, and the slogan "From the River to the Sea." *Exhibit 2*, Reproduced Flyer.

On January 10, 2024, Dean McDonald forwarded the complaint to Operations Manager Antonio Morales, who removed multiple fliers from outdoor locations, including fliers posted by two other organizations. ¶ 39. Within a day, the University President and University Deputy General Counsel were spearheading an investigation and disciplinary action; six days later, Morales referred TBSDS for conduct charges.

On February 16, 2024, Assistant Dean Melissa Graham found TBSDS responsible for violating campus signage policy by "posting flyers in multiple unapproved locations" and imposed "conduct probation". *Exhibit 3*, Flyering Outcome Determination. At the proceeding, she explicitly showed the email from the Outside Agitator and emphasized its characterization of the flier's contents. Upon information and belief, other organizations who have postered in similar areas— including two other organizations that had postered at the same time as TBSDS—were not issued conduct charges, their fliers were not forwarded to the President of the University, the University Police were not asked to investigate video footage of the students posting them, and they were not placed on conduct probation.[3]

---

[3] Should this Court find the evidentiary record insufficiently developed, Plaintiffs respectfully request a hearing or submit good cause exists for expedited, limited, narrow discovery on these issues. *Ethicon, Inc. v. Angelini*, 687 F. App'x 859, 860 (11th Cir. 2017) *Fed. Trade Comm'n v. E.M. Sys. & Servs., LLC*, 2015 WL 13709807, at *14 (M.D. Fla. June 17, 2015) (Merryday, J.).

On April 22, 2024, TBSDS held a protest action at the Marshall Center against budget cuts to DEI programs and in solidarity with Palestine. *Exhibit 4*, Petition Delivery.[4]  The Marshall Center is open to the public and contains a food court with a Papa John's and a Panda Express.  USF's admissions center boasts online that there's "never a dull moment" and it's "the hub of student activity on campus". *Exhibit 5*, Transcript of Admissions Center YouTube Video; https://youtu.be/hKbOI-gMxOY; (accessed Nov. 23, 2025).  About ten TBSDS members entered to deliver a petition to Dean McDonald with hundreds of students' signatures on it.  Multiple students wore keffiyehs during the petition delivery—a visible expression of solidarity with Palestinian culture and history.

Though the students chanted slogans, ("Dean McDonald you're no good, defend diversity like you should") they impeded no activities in the student center and disturbed no one.  Dean McDonald met briefly with the students and accepted their petition, then they left, chanting. But after the action Graham issued conduct charges and put the organization on interim suspension, claiming they were disruptive and failed to comply with orders.  The notice advised that "the organization is **not allowed** to hold or participate in any formal or informal meeting regarding the organization *or the alleged violation*". *Exhibit 6*, Interim Suspension (Bold in original; italics added).

---

[4]    Exhibits, including video, are available upon request at Exhibits; They'll be mailed to the Clerk's Office and opposing counsel on USB, as well.  Documents of course will also be on ECF.

The Interim Suspension was issued approximately Friday, April 26, 2024. Defendants knew that Plaintiffs had a Nakba Day commemoration event planned for Monday, April 29, and explicitly barred it, "inside or outside the USF Library," in the interim suspension notice. *Exhibit 6.* The University offered no accommodation, prohibiting Palestinians and allies from honoring the suffering of their people, as tens of thousands of innocent Palestinians were being slaughtered in Gaza. ¶ 39.

The same day as the suspension notice, Dean McDonald emailed the entire student body with a sudden, unprecedented, week-long restriction on expression at "all academic buildings, which includes the Libraries, Information Commons (SM) the Marshall Student Center (T) and similar student centers… no events… protests, or demonstrations *near those facilities* on campus will be permitted" during the entire week of Nakba Day (*emphasis added*). ¶ 40.

On April 29, TBSDS members, other students, and members of the public gathered for the Nakba Day event; campus security blocked them from assembling at their intended location so they relocated to the MLK Plaza. ¶ 44. There, the Nakba Commemoration event continued briefly. Around 4:30 PM, Dean McDonald announced a previously unheard of 5:00 pm curfew on threat of arrest. Earlier in the semester, TBSDS and other student organizations had regularly hosted events in public forums on campus later than 5:00 PM. ¶ 45. After some discussion, Dean McDonald advised the group they could stay after 5:00 PM to eat pizza, so long as they did not discuss Palestine or protest.

The next day, April 30, TBSDS members and other people again gathered at MLK Plaza.  The gathering again contained TBSDS members and other students and community members.  Dean McDonald advised the protestors they would have to disperse by 5:00 PM.  But before 5:00 PM, USF Police requested Tampa Riot police to disperse them, which they did with tear gas and rubber bullets, while allowing Pro-Israel demonstrators to remain shouting Islamophobic epithets.

Following the April 30th protest, USF expelled TBSDS and Hinckley.  Hinckley's expulsion focused largely on her position as the TBSDS president, and continued association with TBSDS after its suspension.  Dean McDonald advised Indawala that she would be barred from starting a new organization with "similar members and purpose"—an accurate reading of official USF Policy 6.017 (6)(C)(2). *Exhibit 7*; *Exhibit 8*.

Following the expulsions, USF has persistently approached anyone displaying a TBSDS logo or sign while gathering, tabling or protesting on campus and attempted to discipline them or eject them from traditional public forums on the basis that TBSDS is an expelled organization.  On October 1, 2024, Dean McDonald approached students gathered with signs and literature and said they were not allowed to be there with "that sign and those posters" even though TBSDS "is not a student organization" *Exhibit 9*.  On February 10, 2025, Tong was tabling outside for TBSDS; she was suspended for  "engag[ing] in activity under the Tampa Bay SDS name" while "tabling… with a table banner displaying the name Tampa Bay Students for a Democratic Society (SDS)".  *Exhibit 10*, Tong Suspension Notice.

To this day, TBSDS and Hinckley remain expelled (*Id.*, at ¶ 238); Tong is suspended; the USF website continues to warn against associating with TBSDS. *Exhibit 11-* USF Webpage.  Plaintiffs and other members or supporters of TBSDS remain banned from expressive activity in relation to TBSDS and its advocacy mission on campus; and Plaintiffs and other students remain banned from registering any new student organizations espousing the important ideas that TBSDS championed.

## II.    ARGUMENT

### A. The Standard

Plaintiffs satisfy their burden to "clearly establish": (1) a substantial likelihood [they] will ultimately prevail on the merits… (2) irreparable injury unless the injunction issues; (3) threatened injury to the them outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Yoseph v. Sec'y, Fla. Dep't of Corr.*, No. 25-10113, 2025 WL 2366445, at *5 (11th Cir. Aug. 14, 2025).

### B. Plaintiffs Are Substantially Likely to Prove a Violation of their Expressive Rights Under the CAFE Act

#### 1.  Substantive Law Under the CAFE Act

The Florida Free Expression on Campus Act ("the CAFE Act") explicitly labels the outdoor "generally accessible areas… in which members of the campus community are commonly allowed" at public university campuses like USF as "traditional public forums," and reaffirms the broadest protection of "expressive activities"; "all forms of peaceful assembly, protests, and speeches; distributing

literature; carrying signs; [and] circulating petitions" are protected and "[a] person who wishes to engage in an expressive activity in outdoor areas of campus may do so freely, spontaneously, and contemporaneously."  Fla. Stat. § 1004.097(3)(a-e) (2018). Plaintiffs have demonstrated repeated attempts at just such expression in the public areas of campus, before and after they were suspended or expelled.

Even without the added element of subject matter discrimination manifestly evident in this case, Defendants' unlawful conduct in banning Plaintiffs' speech and association in a public forum could not be more clear or explicit. Defendants have banned TBSDS; they've banned any group with "similar members and purpose"; they've blocked and punished continuing attempts to associate, assemble and speak. On October 1, 2024 Dean McDonald expressly said that even as a non-student, community organization, TBSDS is still banned, asserting "your organization that is not a student organization is not supposed to be doing anything on our campus.[5] *Exhibit 9*.  That she objected specifically to TBSDS' expressive activities was explicitly clear by her October 1, 2024 reference to "that sign and those posters," as she drove five students away with the threat of arrests by armed police. *Id*.

The CAFE Act only allows speech restrictions "that are reasonable and content-neutral on time, place, and manner of expression and that are narrowly tailored… clear and published and… provide for ample alternative means of expression." Fla. Stat. §

---

[5] The CAFÉ Act extends its speech protections to far more than just students – "[o]utdoor areas of campus are considered traditional public forums for individuals, organizations, and guest speakers Fla. Stat. Ann. § 1004.097(3)(c).

1004.097(3)(c) (2018).  Content neutrality is absent from defendants' complete ban on TBSDS and groups with "similar members and purpose", since the entire "purpose" of TBSDS is to further a particular viewpoint through expressive action.  The directives are thus viewpoint based—"an egregious form of content discrimination." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).  Even were it content-neutral the ban would still violate the CAFE Act because it is not narrowly tailored, nor does it provide ample alternative means of expression.  Nor are the bans on associating with TBSDS "clear" or "published".  No one visiting the campus public forums, open to the public, would know that there were any limitations on their speech.

Finally, USF's failure to provide "ample alternative means of expression" for TBSDS and its members' messages is not a bug; it is a feature.  USF has banned Plaintiffs, they have banned organizations with a "similar purpose"; they have banned TBSDS from meeting virtually (*Exhibit 11*); they have banned anyone from espousing TBSDS' message in their public forums.  They explicitly aim to make it impossible for Plaintiffs to recruit, to organize, and to engage with decision-makers to advocate changes to campus policy.  Their very aim has been to quash "alternative means of expression" of Plaintiffs' message, and they have largely succeeded.

### 2.  Procedural Relief Under the CAFE Act

Any person injured by a violation of the CAFE ACT "may bring an action" "[a]gainst a public institution of higher education based on the violation of the individual's expressive rights in a court of competent jurisdiction to obtain declaratory and injunctive relief..." Fla. Stat. § 1004.097(4)(a) (2018).

9

**C. Plaintiffs are Substantially Likely to Prove a Violation of Their Free Speech, Assembly and Association Rights Under 42 U.S.C. § 1983**

To prevail on § 1983 claim, a plaintiff must show that defendants are persons who acted under color of state law to deprive them of "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

**1. Individual Defendants In Their Official Capacity Are Suable Under § 1983**

"A suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). Under this "fiction" a litigant must name "the state official or agency responsible for enforcing the allegedly unconstitutional scheme" who "must... have some connection with the enforcement of the provision." *Osterback v. Scott*, 782 F. App'x 856, 858–59 (11th Cir. 2019); *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1248 (11th Cir. 1998). All three individual defendants here were directly responsible for enforcing the unconstitutional schemes alleged, and Defendants were clearly acting under color of law as public university administrators and officials.

**2. The Ongoing Ban on Defendants' Speech, Assembly, and Association in Public Forums Violates the First Amendment**

Defendants stand in flagrant violation of Plaintiffs' First Amendment rights to association, speech and assembly for nearly the same exact reasons they are in violation of the CAFE Act. To determine the constitutionality of speech restrictions, a court follows "a three-step process" of assessing (1) whether the conduct at issue is

protected by the First Amendment, (2) the nature of the forum, and (3) whether the justification for the restriction in question satisfies the requisite standard. *Occupy Fort Myers v. City of Fort Myers*, 882 F.Supp.2d 1320, 1326-27 (M.D. Fla. 2011).

The nature of Plaintiffs' expression is plainly protected; no one will argue Plaintiffs' highly political advocacy is not at the heart of the First Amendment. Plaintiffs also possess an "associational right" under the First Amendment that protects their right to freely associate where "the purpose of the association is to engage in activities independently protected by the First Amendment." *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994). "[T]he freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion—is protected by the First Amendment as a necessary corollary of the rights that the amendment protects by its terms." *Trigo v. City of Doral*, 663 F.App'x 871, 874 (11th Cir. 2016).

Florida has made it east to determine the nature of the forums in which Plaintiffs seek to speak and assemble—they are explicitly, under the CAFE Act, "traditional public forums for individuals, organizations, and guest speakers." Traditional public forums are those that "by long tradition or by government fiat have been devoted to assembly and debate." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983). Their "principal purpose… is the free exchange of ideas." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985). Thus "open access and

11

viewpoint neutrality [is] commanded by the doctrine." *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 673 (1998).[6]

"[S]tringent standards" limit speech restrictions in traditional public forums: content-based regulation must be "necessary to serve a compelling state interest and … narrowly drawn to achieve that end…. The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Frisby v. Schultz*, 487 U.S. 474, 481 (1988).[7] As described in the CAFE Act section above, the ban on Plaintiffs speech fails every prong of this test- no compelling state interest is presented; the ban on Plaintiffs speech and any who associate with them is inconceivably broad, and alternative channels of communication on campus have been deliberately choked off. ¶ 127. Even if USF lawfully expelled TBSDS as a formally recognized student organization (we demonstrate below that they didn't), interpreting that expulsion as a ban on its

---

[6]    We acknowledge that in *McDonough v. Garcia*, 116 F.4th 1319, 1326–27 (11th Cir. 2024), the 11th Circuit reviewed its prior law that stated a public university's "sidewalks, pedestrian mall, and rotunda were limited public forums" and a "Free Speech Area open to outside speakers was a designated public forum." But cases surveyed in *McDonough* predated the CAFE Act, which explicitly eliminates "Free Speech Areas" and clarifies all outdoor areas of campus are traditional public forums. Such a "fiat" creates a traditional forum. *Perry Educ. Ass'n* at 45.

[7]    Of course, even with permissible content-based speech limitations, the "government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject"- ie, when it engages in viewpoint discrimination. *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 893–94 (1995). Such viewpoint discrimination is readily apparent here, but the court need not find it in order to grant the requested relief since the content discrimination and other violations are so readily apparent.

presence in the university's public forums, and a ban on any like-minded organizations, is plainly unconstitutional. USF can no more punish such expression than it could punish a political rally in front of City Hall.

**3. The Ban on Any Organization with "Similar Members and Purpose" to TBSDS is an Impermissible Prior Restraint That Violates the First Amendment**

It is hard to conjure a more broadly sweeping prior restraint than a ban on any civil advocacy organization with "similar members and purpose." This raises First Amendment associational claims distinct from that of the ban on expressive activities in public forums, discussed above. "Among the rights protected by the First Amendment is the right of individuals to associate to further their personal beliefs… There can be no doubt that denial of official recognition, without justification, to college organizations burdens or abridges that associational right." *Healy v. James*, 408 U.S. 169, 181 (1972). The Supreme Court "has consistently disapproved governmental action imposing criminal sanctions or denying rights and privileges solely because of a citizen's association with an unpopular organization... guilt by association alone, without establishing that an individual's association poses the threat feared by the Government, is an impermissible basis upon which to deny First Amendment rights." *Id*. at 185-186 (*cleaned up*). And a state university "may not restrict speech or association simply because it finds the views expressed by any group to be abhorrent." *Id.* at 187-88.

Even if a court were to credit what will have to be Defendants' argument—that they simply object to TBSDS' tactics, without regard to their viewpoint—the explicit,

13

*permanent* ban on any on organizations *with similar members or purpose* "is a form of prior restraint... While a college has a legitimate interest in preventing disruption on the campus, which under circumstances requiring the safeguarding of that interest may justify such restraint, a 'heavy burden' rests on the college to demonstrate the appropriateness of that action." *Healy v. James*, 408 U.S. 169, 184 (1972).   *Healy* involved an earlier incarnation of Students for a Democratic Society, the Court drew distinctions between the local SDS affiliate and its loosely affiliated national organization.   The Court rejected "denying rights and privileges solely because of a citizen's association with an unpopular organization... 'guilt by association alone, without (establishing) that an individual's association poses the threat feared by the Government,' is an impermissible basis upon which to deny First Amendment rights." *Healy v. James* at 186 (*cleaned up*).

University student organization programs are a limited public forum. *Christian Legal Soc. Chapter of the U. of Cal., Hastings Coll. of L. v. Martinez*, 561 U.S. 661, 679 (2010).   Thus "[r]estrictions on speech must be viewpoint neutral and reasonable in light of the purpose served by the forum." *McDonough v. Garcia*, 116 F.4th 1319, 1328 (11th Cir. 2024) (*cleaned up*).   USF's ban on TBSDS and any future "similar" registered student organization is neither viewpoint neutral (as shown below) nor reasonable in light of the pro-expressive, pro-associative purpose served by student organization programs on university campuses. There is no justification that would render a blanket ban on Plaintiffs' pro-Palestine and pro-DEI speech *reasonable* at a public university: "the danger of chilling of individual thought and expression… is especially real in the

University setting, where the State acts against a background and tradition of thought and experiment that is at the center of our intellectual and philosophical tradition". *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 835 (1995). USF "serves the people of Florida, the nation, and the world by fostering intellectual inquiry and outcomes that positively shape the future—regionally, nationally, and globally."[8] The ban on any organization with a similar purpose to TBSDS is not only unreasonable—it's counter to that purpose.

### 4. The Curfew and Tabling Restrictions are Unconstitutional Because they Grant Defendants Unbridled Discretion and are Not Narrowly Tailored

#### (a) Unbridled Discretion

Defendants' speech limitations now require "prior approval" for use of tables and a "reservation" for events after 5:00 PM. *Exhibit 12*, Policy 6-028. But no published standards exist for consideration of such requests. "The plainest example of an unconstitutional grant of unbridled discretion is a law that gives a government official power to grant permits but that provides no standards…" *Sheets v. City of Punta Gorda, Fla.*, 415 F. Supp. 3d 1115, 1124 (M.D. Fla. 2019) *quoting Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 755-56 (1988). There are "two major First Amendment risks associated with unbridled licensing schemes: self-censorship by speakers in order to avoid being denied a license… and the difficulty of effectively detecting… and correcting content-based censorship 'as applied'…" *Lakewood v. Plain Dealer Publ'g Co.*,

---

[8] "Mission", University of South Florida, accessed October 22, 2025. https://www.usf.edu/about-usf/mission-vision.aspx.

486 U.S. 750, 759 (1988).  "Permit requirements should contain narrowly drawn… definite standards…" *Bloedorn v. Grube*, 631 F.3d 1218, 1236 (11th Cir. 2011).

A discriminatory enforcement or unbridled discretion claim can be brought if a pattern of selective enforcement appears. *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 809 (11th Cir. 2020) (*cert denied* 142 S.Ct. 584).  That pattern is detailed below in the section demonstrating viewpoint discrimination.

**(b) Lack of Narrow Tailoring**

Regulation of time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests. *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989).  USF interprets its new policy to require any free speech activities on campus after 5:00 PM to obtain "a reservation through the reserved activity request process" (though a better interpretation is that it does not). *Exhibit 12*, Policy 6-028 (L)(3).  Policy 6-028 also requires "prior approval" for use of tables on campus.

Whatever Defendants' purpose in imposing the 5:00 PM curfew, it is untenably early for speech and advocacy outdoors on a public university campus.  *See City of Watseka v. Illinois Pub. Action Council*, 796 F.2d 1547, 1556 (7th Cir. 1986), *aff'd,* 479 U.S. 1048 (1987) ("Watseka is attempting to roll up the front sidewalks of all its citizens at a very early hour. Even Girl Scouts will have a difficult time selling their cookies by 5 p.m."); *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 572 (6th Cir. 2012) (restricting all canvassing activities after 6 P.M. not narrowly tailored); *Aptive*

16

*Env't, LLC v. Town of Castle Rock, Colorado,* 959 F.3d 961, 996 (10th Cir. 2020) (7:00 PM curfew does not "directly advance[] in a material way... substantial interest.")

The tabling ordinance is no better—if Defendants seek passable plazas and walkways there are far narrower ways to do so; the blanket prohibition on tabling without prior discretionary approval cuts off the spontaneous speech any university should encourage in a public forum.

**5.  Plaintiffs' Suspensions and Expulsions were Imposed Without Due Process Since Plaintiffs were Barred from Consulting with Each Other to Prepare a Defense**

USF provides robust due process for students accused of wrongdoing.  Such a scheme imbues Plaintiffs with a property interest in their enrollment protected by the Fourteenth Amendment.  The ability to prepare a defense is fundamental to due process.  Yet, the "interim suspension" USF imposed on TBSDS following the April 22, 2024 petition delivery at the Marshall Student Center explicitly ordered that "the organization is **not allowed** to hold or participate in any formal *or informal* meeting regarding the organization or the *alleged violation*". *Exhibit* 6 (Bold in original; italics added).  The **bold** made it clear USF intended to enforce the prohibition to the fullest extent, and the letter very specifically emphasized the organization could not even meet concerning the "alleged violation"—even informally.  This is an appalling departure from what process is due.

Serious consequences resulted.  Hinckley went into the subsequent informational meeting without opportunity to prepare, without an advisor or counsel,

17

having been barred from acting to prepare with anyone but herself. Unsurprisingly, the suspension was extended. Subsequent expulsions and suspensions rested on TBSDS continuing to act as an organization notwithstanding its suspension, and students' association with the suspended organization. The ban on TBSDS holding any meetings continued through the expulsion hearings. USF should be required to reinstate TBSDS, Hinckley, and Tong, and to expunge any disciplinary sanction records which were based expressive conduct in association with TBSDS or violation of the unconstitutional policies identified herein in light of the due process violations.[9]

### 6. The Discipline Imposed was Viewpoint Driven at Every Step

Though Plaintiffs have demonstrated their right to relief even without demonstrating viewpoint discrimination, they are also substantially likely to prevail on the more fact-intensive viewpoint discrimination claim as well. In any forum, the government cannot "discriminate on the basis of the government's opposition to the speaker's viewpoint." *Cook v. Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313, 1321 (11th Cir. 2005). Viewpoint discrimination is unconstitutional *per se*. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1126 (11th Cir. 2022).

Viewpoint discrimination here cannot be credibly disputed. The ban on any organization with a "similar purpose" is viewpoint based by definition. Viewpoint

---

[9]      Hinckley's expulsion explicitly rested largely on her association with TBSDS without regard to specific actions, violating her Associational rights. The "Rationale" starts by repeatedly emphasizing "student identified herself as a member of the USF student organization- Tampa Bay Students for a Democratic Society (Tampa Bay SDS)… she is the President of Tampa Bay SDS… acknowledgment of affiliation with Tampa Bay SDS suggests a level of commitment and responsibility to the organization's actions and decisions." *Exhibit 13*.

discrimination is also unavoidably evident based on the facts: at a time when heated and passionate debate around Israel's conduct in Gaza was roiling campuses across the country, and DEI was, to put it mildly, disfavored by the State of Florida, an outsider expressed their viewpoint to the University about a handful of TBSDS flyers taped to lampposts. The flyers depicted children flying a Palestinian flag from a bombed-out building and the slogan "From the River to the Sea Palestine will be free". The USF President and General Counsel both immediately involved themselves in investigations and punishment over the posts. TBSDS was quickly placed on conduct probation—an unheard-of sanction for an offense that falls just short of littering—even though other organizations with flyers in the same areas suffered no punishment. Shortly after, Plaintiffs organized a petition delivery to the Marshall Center where a small gaggle of TBSDS members marched and chanted for about five minutes then left when they were told to leave, disturbing no one. A viewing of *Exhibit 4* is helpful here. For this, TBSDS was immediately interim-suspended on the obvious pretext the action disturbed the peace of the Marshall Center—a public "Hub of Student Activity" where the Admissions Office boasts "There's Never a Dull Moment!" and fast-food outlets and video games abound. *See Exhibit* 5.

The interim suspension ordered TBSDS not to meet formally or informally, even to discuss the pending charges; a laughable due process violation that cannot possibly be standard regulation. The administration, which knew about the next week's Nakba Day commemoration, repeatedly ordered TBSDS not to have the event, even in public forums. Simultaneously, USF imposed a campus-wide, unprecedented,

weeklong ban on *any* demonstrations, plainly to shut down any possibility of encountering Plaintiffs' disfavored message on Palestine and its history, and concocted sudden 5:00 PM curfews and bans on tabling without permits.

When Nakba Day rolled around the next week, Defendants hounded Plaintiffs from their planned meeting spot, then hit them at their new spot with an *ad hoc*, novel curfew, granting limited relief from the curfew so long as they did not discuss Palestine or protest. USF was founded in 1956—so it took 68 years for USF to suddenly ban all pre-finals protests and impose a curfew and tabling regulations on the eve of Nakba Day. We don't need proof beyond a reasonable doubt, but we're getting close.

Overnight, a security camera went up in MLK Plaza, and when students and citizens gathered the next day to protest, they were again hit with an *ad hoc* 5:00 PM curfew; authorities moved in to clear the protestors, who had done nothing violent and violated no law, before 5:00 PM, with tear gas and rubber bullets. TBSDS was then expelled and blamed for the actions of citizens unrelated to TBSDS. Hinckley, who had *zero* prior disciplinary history, was expelled due explicitly to her association with TBSDS and with little regard to any specific actions relating to the protest—the majority of which she did not even personally attend. Hinckley was not even shown to have been *present* when police bullets and tear gas went flying.

Since then, Dean McDonald herself personally, repeatedly accosts TBSDS students peacefully milling about or staffing tables in open public plazas expressly reserved for robust debate, telling them TBSDS—even as a non-student organization—is banned, taking umbrage at "that sign", and "those posters" and

chasing them off with armed police.  The USF website publicly proclaims TBSDS' pariah status.

Meanwhile, Zionist organizations in the Tampa Bay area laud USF "for being responsive to our community", in its response to the protests above, and otherwise, detailing the many ways in which the administration "demonstrate[d] their commitment to Jewish Tampa."[10]  There can be no question that USF, whether motivated by wealthy benefactors, political winds, or even genuinely felt conviction, has taken a side on the question of Palestinian rights, who may speak about them, and who must not.

### D. Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction

Even brief deprivation of freedom of speech constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  "It is well established that the loss of First Amendment freedoms, for even minimal periods of time… constitutes irreparable injury." *KH Outdoor, LLC v. Trussville*, 458 F.3d 1261, 1271-72 (11th Cir. 2006). Because the injuries in this case "flo[w] from" violations of the First Amendment "such that they cannot be cured by the award of monetary damages," Plaintiffs satisfy their burden to show irreparable harm will continue absent an injunction. *Occupy Fort Myers*, 882 F.Supp.2d at 1339.

Further, Tong is suspended and Hinckley is expelled from USF right now. Tong's ability to participate in USF programming and access resources as an alumnus

---

[10]    https://share.google/myQBi3R0aoKdKmNl7; "Jewish Tampa" is no monolith- the press release should have said "Zionist Tampa".  It's a distinction with a difference.

is infringed, and Hinckley is "unable to take exams and receive credit for courses; delays occasioned will result in unquantifiable or ascertainable lost opportunities, interviews, and wages." *Doe v. Texas Christian Univ.*, 601 F. Supp. 3d 78 (N.D. Tex. 2022). *See LIH ex rel. LH v. New York City Bd. of Educ.*, 103 F. Supp. 2d 658, 665 (E.D.N.Y. 2000) ("no level of monetary damages could possibly compensate these students for the educational opportunities they will lose; monetary damages cannot supply the grade promotion lost to a student excluded").

**E. The Threatened Injury to Plaintiffs Outweighs Any Damage the Proposed Injunction May Cause Defendants and the Injunction Would not be Adverse to the Public Interest**

A state actor "has no legitimate interest in enforcing an unconstitutional ordinance. For similar reasons, the injunction plainly is not adverse to the public interest. The public has no interest in enforcing an unconstitutional ordinance." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006).

**III.    A NOMINAL BOND IS REQUIRED AT MOST**

Plaintiffs submit "no security at all" is appropriate or, at most, a "nominal bond". *BellSouth Telecomm., Inc. v. MCImetro Access Transmission Servs.*, LLC, 425 F.3d 964, 971 (11th Cir. 2005); *Naples Pride, Inc. v. City of Naples*, No. 2:25-CV-291-JES-KCD, 2025 WL 1370174, at *18 (M.D. Fla. May 12, 2025) ($100.00 bond).

**IV.    CONCLUSION**

In a vital part of the Tampa community, on sidewalks and plazas expressly reserved for vigorous and lively debate, USF has silenced the voice of a huge swath of students and citizens. Any gathering of TBSDS members, anyone expressly

associating with TBSDS, or even anyone associating with TBSDS members and acting with a "similar purpose," does so at risk of expulsion and arrest.  By design, the ban is crushing any expression of solidarity for the Palestinian People.  This is a lousy way to run a university.  It is also breathtakingly, startlingly unconstitutional.

Plaintiffs respectfully move this court to issue a preliminary injunction, enjoining Defendants from maintaining the expulsion of TBSDS and from enforcing the unlawful policies identified above (including the policy prohibiting Plaintiffs' future expressive conduct in the public forums on campus), and ordering Defendants to return TBSDS to good standing as a registered student organization, expunge Plaintiffs' disciplinary records, reverse the expulsion of Plaintiff Hinckley and reenroll her, and vacate the suspension of Plaintiff Tong.[11]

November 25, 2025                              Respectfully Submitted,

/s/ Collin Poirot___
Collin Poirot, Esq. *Special Admission*
2603 Oak Lawn Ave, Ste. 300
Dallas, TX 75219
(214) 392-2281
cpoirot.law@gmail.com

/s/ Andrew Stoll
Andrew B. Stoll  *Special Admission*
**Stoll, Glickman & Bellina, LLP**
300 Cadman Plaza West, 12th Fl.
Brooklyn, New York 11201
(718) 852-3710
astoll@stollglickman.com

/s/ Walker Smith IV_____
Walker Smith IV
FL Bar No.: 1031486
**LegalSmiths Consulting Group, PA.**
283 Cranes Roost Blvd., Ste. 111,
Altamonte Springs, FL 32701
(407) 887-1370
Walker@LegalSmithsConsulting.com
LegalSmithsConsulting@Gmail.com

---

[11] Pursuant to Local Rule 3.01(k), Plaintiffs are not submitting a proposed order to accompany this motion.

23

## CERTIFICATE OF SERVICE

I hereby certify that this Motion filed through the ECF system is expected to

be sent electronically to the registered participants as identified on the court's docket:

**Richard C. McCrea, Jr.**                          **Cayla McCrea Page**
Greenberg Traurig, P.A.                              Greenberg Traurig, P.A.
101 E Kennedy Blvd Ste 1900                          101 E Kennedy Blvd Ste 1900
Tampa, FL 33602-5148                                 Tampa, FL 33602-5148
813-318-5700                                         813-318-5700
813-318-5900 (fax)                                   813-318-5900 (fax)
mccrear@gtlaw.com                                    pagec@gtlaw.com


Dated:       Brooklyn, New York              */s/ Collin Poirot*
             November 25, 2025               Collin Poirot