# EXHIBIT 2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMPA BAY STUDENTS FOR A DEMOCRATIC SOCIETY, VICTORIA HINCKLEY, SABA INDAWALA, and VICKY TONG,

Plaintiffs,

v.

CASE NO. 8:25-CV-02752-SDM-AAS

UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES, RHEA LAW, MELISSA GRAHAM, and DANIELLE MCDONALD,

Defendants.

______________________________/

**DECLARATION OF MELISSA GRAHAM**

I, Melissa Graham, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. My name is Melissa M. Graham. I am over 18 years of age. This declaration is based on my personal knowledge or on my review of USF's business records, which were made by, or from information transmitted by, a person with knowledge of the event described therein, at or near the time of the event described, and are kept in the ordinary course of the regularly conducted business

activity of such person and USF, and it is the regular practice of USF to make such records.

2. I am employed by the University of South Florida as the Assistant Dean of Students/Director of Student Conduct and Ethical Development since 2018. I have 7 years of experience in student conduct and two decades' experience in higher education.

3. As a part of my duties, I oversee the Student Conduct and Ethical Development process, which includes reviewing referrals, determining the imminency of issues, distributing cases to other case managers, participating in meetings with students and organizations, attending hearings as a hearing officer and adjudicating cases in formal hearings, and making determinations as to sanctions. This role requires that I have access to evidence, files, and documents related to student conduct cases in order to review incidents, make determinations, communicate outcomes, and ensure that university policies and procedures are followed.

## A. Student Conduct and Ethical Development – Student Conduct Process

1. Student Conduct and Ethical Development is governed by the Student Code of Conduct, USF Regulation 6.0021. A true and correct copy of the Student Code of Conduct is attached hereto as **Exhibit "A."** Students and student

organizations are responsible for reading and abiding by the standards of the Code.

2. Student Conduct and Ethical Development receives referrals regarding alleged violations of the Student Code of Conduct. Any member of the University community may refer a student or student organization for an alleged violation of the Student Code of Conduct.

3. All reported information will be reviewed by me, or my designee, to determine the appropriate next steps, which include, but are not limited to, further fact gathering, issuance of charges, referral to another department, or an informational meeting to determine a resolution of the report and potential conduct violations.

4. Student Conduct and Ethical Development can issue temporary restrictions to any student or student organization involved in an incident. These temporary restrictions include, but are not limited to, interim suspension, removal from on-campus housing, no contact orders, restrictions from clubs, events, and organizational activities, and restrictions from specific areas on University

premises. The student and student organization will receive written notice detailing the issued temporary restrictions.

5. If an interim suspension is issued, a student or student organization will be afforded an opportunity to attend an informational meeting. An informational meeting will occur, the organization and/or student have the opportunity to provide their narrative of the incident, and the hearing officer will review the available information to determine if the interim suspension will remain, be modified, or lifted.

6. After an informational meeting, students or student organizations are provided two resolution options: either a resolution agreement (where a student or student organization waives their right to a formal hearing and appeal and requests that the hearing officer conducting the informational meeting determine the findings and applicable sanctions) or a formal hearing (through either an administrative hearing or a university conduct board). Students or student organizations are advised that, during the student conduct process, they have the right to be accompanied by an advisor of their choice, have the right to present relevant information, and to question witnesses.

7. Students who engage in more harmful behavior or repetitive prohibited behavior may be subject to more significant sanctions for a violation of

the Code. Students who participate honestly, who take accountability, or whose violations were less harmful may merit consideration of a lesser sanction.

8. A student or student organization may appeal in writing the decision of the University conduct board or administrative hearing within five days of the decision to the Dean of Students, or designee. The decision of the Dean of Students, or designee is the final decision of the University of South Florida. Students and student organizations are notified in writing that they may seek judicial review pursuant to Florida Rule of Appellate Procedure 9.190(b)(3) of a final University decision by filing a petition for certiorari review with the appropriate circuit court within thirty (30) days of the final University decision.

B. <u>Tampa Bay Students for a Democratic Society's Sanctions</u>

1. Tampa Bay Students for a Democratic Society has a history of disregarding USF's policies and directives.

2. In October 2020, Tampa Bay Students for a Democratic Society held an event on campus despite the fact that an email was sent to all students in August 2020, informing them that there should be no in-person meetings or tabling on campus due to COVID-19. The Tampa Bay Students for a Democratic Society President admitted to having understood the instructions but ignored the request as they felt it was not a policy which would be enforced. The Tampa Bay

Docusign Envelope ID: 456441BA-72C8-410F-BE37-5C86A5988349

Students for a Democratic Society was issued a conduct probation beginning on December 10, 2020 and was suspended during the duration of the Spring 2021 semester, in addition to other sanctions.

3. In November 2020, Tampa Bay Students for a Democratic Society scheduled, advertised, and participated in two events that were in violation of the USF Policy 6-040 Return to Regular University Operations In COVID-19 Environment. As a result, Tampa Bay Students for a Democratic Society was suspended from January 25, 2021 until December 10, 2021.

4. During the period of suspension, Tampa Bay Students for a Democratic Society was not permitted to hold any events. Despite that fact, in January 2021, Tampa Bay Students for a Democratic Society posted flyers in campus locations where posting was not permitted. No formal action was taken for these incidents, but the occurrences were documented in Tampa Bay Students for a Democratic Society's record.

5. In February 2021, additional Tampa Bay Students for a Democratic Society flyers appeared on campus that had not been approved.

6. In March 2021, there was another incident involving unauthorized activity by the organization. Because Tampa Bay Students for a Democratic Society was still under suspension at the time, information regarding this incident

was retained for consideration in the event the organization sought to return to active status.

7. On January 19, 2023, members of the organization were asked to leave a presidential inauguration event due to disruptive behavior, including standing up and yelling during the proceedings. Tampa Bay Students for a Democratic Society did not receive any sanctions for that incident.

8. In March of 2023, during a sit-in in an administration building, the organization was instructed to leave but refused to comply, resulting in a disruption and police intervention. After the police intervened, individuals engaged in acts of physical violence against the police. The individuals responsible were processed through conduct process and were assigned sanctions, including the civility and community standards system (workshop), and deferred suspension, meaning failure to complete their assigned classes would result in suspension.

9. In January 2024, USF received a complaint relating to signage that was affixed to an exterior light poles on the USF Tampa campus, which, per USF Policy 6-028, is an unauthorized location. For this incident, Tampa Bay Students for a Democratic Society received conduct probation from February 12, 2024, to May 6, 2024, as well as an educational sanction to educate members of Tampa Bay

Students for a Democratic Society on Policy 6.028.

10. On April 22, 2024, Tampa Bay Students for a Democratic Society marched into the Marshall Student Center ("MSC"), chanting up four flights of stairs to Dean Danielle McDonald's office. Near the time of finals exams, the MSC becomes an academic space in which students are studying and preparing for upcoming final exams. The chanting was disruptive to the academic environment. Dean McDonald asked them to stop chanting because it was disrupting students who were studying. Dean McDonald suggested that Tampa Bay Students for a Democratic Society could schedule a meeting with her to discuss its concerns. When the group did not cease its chanting, Dean McDonald asked that they leave the building because they were disruptive.

11. Student organizations and students have a duty and obligation to control their level of sound so that their programs, activities or presentations do not disturb classes or unduly hinder other members of the university community from engaging in their tasks or activities or from enjoying their right to privacy within their living, working, and social spaces. The sound level of any communication must be limited to what is necessary for the event without excessive intrusion or interruption in adjacent areas. The University facilities/building managers, faculty and other University administrators may

request that sound levels to be reduced to eliminate disruption or interference with the University's educational mission. The University may also request that a disruptive person leave the premises.

12. Student Conduct and Ethical Development received several referrals relating to the April 22, 2024 incident in the MSC. As a result, I made the decision to place the Tampa Bay Students for a Democratic Society on an interim suspension for the incident.

13. During interim suspension, and the suspension, Tampa Bay Students for a Democratic Society was advised that the organization was prohibited from holding or participating "in any formal or informal meetings regarding the organization or the alleged violations.[1]" This language is not intended to prevent the organization from gathering evidence or information to prepare for any stage of the student conduct process. If Tampa Bay Students for a Democratic Society had asked for clarity, which it did not, I would have told them the same. In fact, Tampa Bay Students for a Democratic Society was advised that, during the student conduct process, it had the right to be accompanied by an advisor of its choice, that it had the opportunity to present relevant information, and had the

---

[1] This language is included in interim suspension or suspension letters to other student organizations.

opportunity to question witnesses. I am not aware that Tampa Bay Students for a Democratic Society was restricted in any way from preparing for the informational meeting or the hearing. In fact, Tampa Bay Students for a Democratic Society had counsel present, Marie Taylor of Smith & Eulo, at the hearing.

14. On April 25, 2024, Tampa Bay Students for a Democratic Society met with Student Conduct and Ethical Development for an informational meeting regarding the April 22, 2024 incident. During this meeting, the interim suspension status of the organization was reviewed.

15. On April 26, 2024, Tampa Bay Students for a Democratic Society received a letter regarding the outcome of the interim suspension review, stating the interim suspension and the related restrictions would remain in place.

16. The interim suspension status meant the Tampa Bay Students for a Democratic Society was not allowed to hold or participate in any formal or informal meetings regarding the organization; host/cohost/attend any programs, functions, or activities; utilize any services/resources offered to the student organization through any University office/department (e.g., Intramurals, Center for Student Involvement, Center for Leadership and Civic Engagement, Fraternity and Sorority Life, Events and Meeting Services); participate in or hold leadership

positions; or conduct any recruitment/new member/pledge activities or have contact with any potential new members/new members/pledges until further notice. The letter also stated that, due to the interim suspension being upheld, the Tampa Bay Students for a Democratic Society event publicized on their Instagram account for Monday, April 29, 2024, at noon inside/outside the USF Library needed to be canceled. The Tampa Bay Students for a Democratic Society was informed that hosting the event would violate the interim suspension and would result in additional violations of the USF Student Code of Conduct.

17. In addition, all students and organization advisors received an email from Dean McDonald on April 28, 2024, stating any event, protest, or demonstration that did not have an existing approved reservation would not be permitted during the week of April 29, 2024, which was a final exam week. The email also stated that no events were to occur in and around academic buildings due to it being final exam week and that the penalties for non-compliance with these University policies would result in an immediate interim suspension of a student organization and possibly additional sanctions for groups and individuals.

18. Dean McDonald's email also stated that tents were not allowed without approval. Pursuant to University policy, Events, Signage and Space Management, 6-028[2], tents may be on campus only between the hours of 7:00 am and 5:00 pm. Tents may not be left out overnight. Tampa Bay Students for a Democratic Society did not submit a request for tent approval for any events occurring the week of April 29, 2024. Moreover, no overnight activities are to occur unless there has been a request and approval for such events and Tampa Bay Students for a Democratic Society did not request to host an overnight activity.

19. On April 28, 2024, I emailed the Tampa Bay Students for a Democratic Society a reminder that the April 29 event would violate the suspension and must be canceled, reiterating the parameters of the interim suspension for the organization.

20. On April 29, 2024, Tampa Bay Students for a Democratic Society emailed the USF President, Dean McDonald, and USF Police about the previous day's email. Dean McDonald replied to that e-mail, reiterating that tent restrictions and time, place, and manner rules were in effect for final exam week, and that suspended organizations could not host events. Dean McDonald warned

---

[2] A true and correct copy of the Events, Signage and Space Management Policy, 6-028 is attached hereto as **Exhibit "B."**

that violating these directives could result in more Code of Conduct violations and trespass orders.

21. Despite these repeated notifications, Tampa Bay Students for a Democratic Society publicized and held events on April 29 and 30, 2024.

22. On April 29, 2024, an Event Support Team member met a Tampa Bay Students for a Democratic Society member outside the library and provided the Dean's email, stating they could not gather there. The organization then moved to MLK Plaza, where individuals set up tents, again in violation of the previously stated policy and restrictions, resulting in multiple arrests.

23. After orders to disperse were given, Tampa Bay Students for a Democratic Society did not disperse the organization's participants.

24. In further disregard for the suspension requirements, Tampa Bay Students for a Democratic Society's President, Hinckley, stated on Instagram the group would return to MLK Plaza the next day. On April 30, 2024, Tampa Bay Students for a Democratic Society held another event at MLK Plaza, again violating the suspension.

25. Witnesses reported that a cart with mats was brought onto campus. Orange vests, umbrellas, and wooden shields were distributed. Participants were

instructed on how to use these items against police. The distribution of these items escalated the situation, leading to law enforcement intervention due to safety concerns. Tampa Bay Students for a Democratic Society did not take any action to prevent or halt the distribution of these items. Multiple crowd members refused to disperse, resulting in more arrests and tear gas use. A gun and a club were found on two event attendees.

26. By not canceling the events, Tampa Bay Students for a Democratic Society facilitated and encouraged violations of university policy and community safety.

27. Despite its clear knowledge of the suspension requirements and the University directives, the organization encouraged others to participate in prohibited events.

28. The organization did not follow directives from university officials and law enforcement.

29. Having found that there was sufficient information to find violations of the USF Student Code of Conduct, including Aiding and Abetting, Disruptive Conduct, Failure to Comply, policy violations, and Weapons offenses, I made the decision to expel Tampa Bay Students for a Democratic Society from USF's

campus. The sanction of expulsion was in keeping with the serious nature of the organization's conduct.

30. Tampa Bay Students for a Democratic Society appealed my decision, which was upheld by Jacob L. Diaz, Ed. D., Associate Regional Vice Chancellor/Dean of Students.

C. **Victoria Hinckley's Sanctions**

1. On April 29, 2024, Victoria Hinckley ("Hinckley"), the President of Tampa Bay Students for a Democratic Society, led a demonstration after the organization was placed on interim suspension on April 22, 2024 in violation of specific instructions that, because of its interim suspension status, Tampa Bay Students for a Democratic Society was not permitted to host or engage in campus events.

2. Around 1:00 p.m. on April 29, 2024, Hinckley began making speeches. Several individuals put on orange safety vests. Mats were removed from a cart, revealing large wooden squares with bolts sticking out. Umbrellas were also distributed, and participants were directed on how to use them against police.

3. Hinckley repeatedly approached the Dean of Students to ask why Students for a Democratic Society had to leave by 5:00 p.m., and was told the event

violated policy. Hinckley continued to argue with the Dean of Students about the deadline. Chief Daniel also reiterated the 5:00 p.m. deadline to Hinkley.

4. On April 30, 2024, I placed Hinckley on interim suspension. She was provided opportunity to participate in an informational meeting and she was provided with an administrative hearing. She thereafter appealed my decision, which was upheld.

5. Hinckley's actions created an unsafe environment for the USF community. I determined that Hinckley violated of the Student Code of Conduct: Failure to Comply, University Policy and/or Local Ordinance, State, or Federal Law, Aiding and Abetting, Disruptive Conduct, Weapons, Firearms, or Explosive Devices, and Health and Safety. For that reason, I imposed the sanction of expulsion, effective June 14, 2024.

**D. <u>Saba Indawala's Sanctions</u>**

1. Student Conduct and Ethical Development received information about an incident on October 1, 2024, at 1:45 p.m. Saba Indawala ("Indawala") participated in a rally organized by the expelled Tampa Bay Students for a Democratic Society. Indawala had been informed that she was

prohibited from participating in activities for Tampa Bay Students for a Democratic Society.

2. Indawala was aware of Tampa Bay Students for a Democratic Society's expulsion. Thereafter, Indawala was trespassed by USF Police.

3. I placed Indawala on an interim suspension. After the informational meeting, I modified Indawala's sanctions and she was permitted to attend her online and in-person classes. Indawala was still restricted from all other interactions on all USF campuses, including being prohibited from participating in any official University functions, programs, intercollegiate competitions, or other student activities. In addition, the hold that was placed on her record remained in place.

4. Indawala then participated in a formal hearing. Lauren Ready, Student Programs Coordinator, found Indawala responsible for disruptive conduct and failure to comply. Ready lifted the interim suspension: Indawala is permitted on all USF campuses, is allowed to participate in functions, classes, programs, intercollegiate competitions, and other student activities, and the hold placed on her record was lifted.

E. Vicky Tong's Sanctions

1. On February 10, 2025, Vicky Tong ("Tong") was observed tabling on the Cooper Hall lawn, between Cooper Hall and the Library, using a banner for Tampa Bay Students for a Democratic Society, an organization that had been expelled from campus. In October 2024, Tong participated in a rally organized by Tampa Bay Students for a Democratic Society and went through the student conduct process. At that time, Tong was informed that she was prohibited from organizing or participating in activities for Tampa Bay Students for a Democratic Society due to its expulsion.

2. Tong did not attend the formal hearing that was scheduled for April 7, 2025.

3. I found that Tong's continued activity on behalf of Students for a Democratic Society following its expulsion showed intentional disregard for University policies and the prior sanctions. Accordingly, I found that a suspension (April 8, 2025 through December 12, 2025) was the appropriate sanction. Student Conduct and Ethical Development requested a trespass order for Tong.

4. At the time of my decision, I was reviewing a screen in Banner that was out of date. Therefore, I was not aware that Tong had graduated in December

2024 and was not a current USF student. Subsequently, I was informed by USF PD that, because Tong was not a USF student, it had decided not to enter her trespass order into its system. Tong's attorney, Collin Poirot, was informed of that fact on May 6, 2025.

**F. The Plaintiffs Were Treated In Accordance With The Student Code Of Conduct And Were Not Subject To Any Sanctions On Account Of Their Political Viewpoints Or Expressions**

1. Student Conduct and Ethical Development office adhered to all established policies and procedures in addressing the conduct of the plaintiffs. Each plaintiff was provided with written notice of the alleged violations, informed of their rights and restrictions, and given the opportunity to participate in informational meetings and formal hearings as outlined in the Student Code of Conduct. Temporary measures, such as interim suspensions, were issued only after a review of the available information. Each student or student organization was afforded the right to appeal the disciplinary decisions resulting from the formal hearing. The process was administered consistently and transparently, ensuring that all students and organizations were treated in accordance with the same standards and afforded due process.

2. The treatment of Tampa Bay Students for a Democratic Society, Hinckley, Indawala, and Tong was consistent with the University's treatment of other organizations and was in compliance with Student Code of Conduct, USF Regulation 6.0021.

3. I did not take any action against any of the plaintiffs on account of their political viewpoints or expressions. Instead, I took these actions against the plaintiffs solely based on disruptive conduct and the repeated, documented violations of University policies, including failure to comply with University directives. The plaintiffs were expressly informed of the restrictions and the consequences of noncompliance, yet chose to disregard multiple warnings and directives from the University. The resulting sanctions were a direct response to this pattern of noncompliance and disruption.

4. At least one organization shares a viewpoint similar to that of Tampa Bay Students for a Democratic Society. Students for Justice in Palestine at the University of South Florida is a registered campus student organization at the Tampa campus of USF. Students for Justice in Palestine at the University of South Florida is a student group formed and operated by undergraduate and graduate students currently enrolled at USF. Students for Justice in Palestine bring students

together to express their views on Israel and Palestine. Students for Justice in Palestine has never been placed on an interim suspension, suspended, or expelled.

5. Other organizations have been subject to discipline, including suspension, interim suspension, and have been expelled from USF and are no longer recognized. For example, Delta Tau Delta is not in good standing (conduct probation) due to disruptive conduct, student organization misconduct, and violation of University policy and/or local ordinance, state, and federal law. Delta Chi is separated from USF and currently not recognized by USF. Omega Psi Phi and Phi Beta Sigma was on an interim suspension.

6. The sanctions relating to events that occurred in April 2024 were in no way related to the viewpoints which the individuals or the organization supported or voiced. Instead, the sanctions were based solely on the disruptive conduct and the disregard for Student Code of Conduct and continued violation of University policies and directives.

Docusign Envelope ID: 456441BA-72C8-410F-BE37-5C86A5988349

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on December 12, , 2025.

DocuSigned by:
Melissa M. Graham
1BCD231D098A433...

MELISSA GRAHAM

# EXHIBIT A

UNIVERSITY OF SOUTH FLORIDA

REGULATION

**Number:** USF6.0021
**Title:** Student Code of Conduct
**Responsible Office:** Student Success

Date of Origin: 9-23-85 Date Last Amended: ~~1-30-23~~3-18-24 Date Last Revied: ~~1-30-23~~3-18-24

## I. PURPOSE AND INTENT

Student Conduct and Ethical Development (further referred to as "SCED~~"~~") supports the goals, mission, values, and visions of the University of South Florida ("University" or "USF") by promoting responsibility and adherence to the standards of behavior outlined in this Regulation ("Student Code of Conduct" or "Code").

SCED collaborates with the USF community to advocate for a safe environment that promotes personal accountability and supports student success. SCED facilitates educational opportunities through meaningful interactions with students to encourage their academic, emotional, and professional development. The goal of SCED is to create environments that empower students to engage as ethical citizens in a diverse global society.

## II. STATEMENT OF REGULATION

The USF President has designated SCED, or designee, to administer and maintain this Regulation ("Student Code of Conduct" or "Code"). The Student Code of Conduct describes~~ standards of~~ behaviors that are counteractive to the goals and mission of the University and the process for how the University will hold students and student organizations accountable to these standards of behavior.

## III. STANDARDS OF BEHAVIOR

Students and student organizations are responsible for knowing the information, policies, and procedures outlined in the Code. There is an expectation that students and student organizations adhere to the following standards of behavior.

### A. Commitment to Honor

The Code supports and seeks to put into practice the USF Commitment to Honor. As an ethical community, USF is dedicated to the ideals of excellence in student development, academic learning, scholarship, and research. Each member of this community is expected to accept and live these commitments:

1. I resolve to maintain honor and integrity of the university community in pursuit of student development, academic learning, scholarship, and research.

2. I resolve to respect the dignity and intrinsic value of all persons.

3. I resolve to contribute to the progress and greater good of the community.

4. I resolve to strive for excellence and discovery for myself, others, and the University.

### B. Academic Disruption

Disruptive students in the academic setting hinder the educational process. Instructors have the primary responsibility for managing the classroom environment whether in person or online in accordance with USF Regulation 3.025 Disruption of Academic Process. The Disruption of Academic Process Regulation provides the steps an instructor may take to immediately address a student disrupting a class or academic setting including restricting a student from class. If a student disrupts the classroom or academic setting, the instructor should submit a report in writing using the Academic Disruption Incident Report Form. References to "instructor" include course instructors, faculty, administrators, and staff.

### C. Amnesty

1. Medical

   The University encourages students to seek emergency medical assistance when faced with an alcohol and/or drug-related emergency and in any situation where a reasonable person believes medical treatment to be appropriate. Students who seek or receive emergency medical assistance for themselves or students who seek assistance for another student experiencing an emergency related to the consumption of alcohol and/or drugs may qualify for amnesty. Any student who qualifies for amnesty under the USF Policy 30-004 Medical Amnesty (Student Reporting), may not be charged with violations of the Student Code of Conduct as those conduct violations relate to the consumption and/or use of alcohol and/or drugs. Although students who qualify for amnesty may be exempt from the Student Conduct Process, they may be required to complete educational measures.

2. Hazing
   A student may not be charged with a violation of the Code if the student establishes that, before medical assistance or law enforcement arrived on the scene of the hazing event, the student rendered aid to the hazing victim(s) and establishes all ~~of~~ the following:
   a. The student was present at an event where, as a result of hazing, an individual appeared to need immediate medical assistance.
   b. The student was the first individual to call 911 or USF Police to report the need for immediate medical assistance.
   c. The student provided their own name, the address where the immediate medical assistance was needed, and a description of the medical issue to the 911 or USF Police dispatcher at the time of the call.
   d. The student remained at the scene with the individual in need of immediate medical assistance until such medical assistance or law enforcement arrived and that the student cooperated with such personnel at the scene of the incident.

For more information about hazing and hazing amnesty, reference USF Regulation 6.0023 Prohibition and Prevention of Hazing.

## IV. APPLICABILITY & AUTHORITY

The University of South Florida is one institution with branch campuses. An incident will be referred to the campus where the incident occurred or as designated by the director of SCED, or designee.

Students and student organizations are responsible for having read and abiding by the standards of behaviors of the Code. The University reserves the right to make changes to the Code as necessary. The most updated version of all USF policies and regulations can be found at: http://regulationspolicies.usf.edu.

The Code and Student Conduct Process apply to the behaviors of any student and student organization regardless of location or forum that are inconsistent to the goals and mission of USF. This includes (1) conduct that may present a danger or threat to the health and/or safety of students or others, (2) conduct that adversely affects the University community and/or the

pursuit of its mission, (3) and/or conduct that violates state or federal laws. Students and student organizations are responsible for their guests and may be held accountable for their guests' behavior.

The Student Conduct Process is educational and designed to address student and student organization behavior; therefore, the University will address any alleged violations of the Code independently of any criminal or civil court process. The Student Conduct Process may be carried out prior to, concurrently with, or following civil or criminal proceedings. **Adjudication by an outside entity is not a prerequisite to a determination of responsibility by the University.** Determinations made or sanctions(s) imposed as a result of the Student Conduct Process will not be subject to change because criminal charges were dismissed, reduced, or resolved in favor of the charged student. The University is not required to postpone the Student Conduct Process pending the outcome of any civil or criminal case. Student conduct cases that may result in suspension or expulsion must be resolved prior to the awarding of any degree or certificate.

## V. DEFINITION OF TERMS

~~A.~~ **Administrative Hold~~:~~ –** A restrictive hold placed on a student's record at any point in the Student Conduct Process to assure compliance with sanctions or pending the resolution of conduct matters. This hold may impact the ability of a student to register for courses, request academic transcripts, and receive a degree and diploma.

~~B.~~ **Advisor~~:~~ –** Any individual chosen by the charged student, student organization, and complainant to accompany the party to meetings related to the Student Conduct Process.

~~C.~~ **Charge(s~~):~~) –** Alleged violation(s) of the Student Code of Conduct.

~~D.~~ **Charged Student~~:~~ –** Any student who has allegedly violated the Student Code of Conduct. This term may also refer to a student identified as a respondent as defined in ~~USF Policy 0-004.~~USF Policy 0-004 Sexual Misconduct-Sexual Harassment.

~~E.~~ **Complainant~~:~~ –** Any individual who may have been the subject of sexual harassment, stalking, or violence by the charged student. This may not be the individual who reported the violation(s). This term may also refer to a student identified as a complainant as defined in ~~USF Policy 0-004.~~USF Policy 0-004 Sexual Misconduct-Sexual Harassment.

~~F.~~**Conduct Standing~~:~~ –** A student's status related to University conduct.

~~G.~~ **Day~~:~~ –** A day when the University is open for regular business operations. This excludes Saturday, Sunday, legal/University administrative holidays or when the campus is closed for business. For emailed correspondence, the day of delivery is not included in ~~the~~a

designated time period.

**Event** - An event is a function hosted by a student, student organization, or the University which is publicized and/or open to the general public or members of the campus community.

~~H.~~ **Hearing Officer:** – University official, as determined by the Director of SCED, or designee, authorized to make decisions about alleged violations of the Student Code of Conduct.

~~I.~~ **Impact Statement:** – A written statement provided by the charged student and complainant that explains how the incident has impacted their personal and educational experiences. These statements may be considered in cases of alleged sexual harassment, stalking, and violence.

~~J.~~ **Interim Suspension:** – An immediate temporary separation from the University. Conditions may include restriction from University premises and participation in academic endeavors, and/or other and University-related activities. Interim suspensions will be expedited through the Student Conduct Process.

~~K.~~ **May:** – Is used in the permissive sense.

~~L.~~ **Member of the University Community:** – Any individual who is currently employed by the University, any student of the University, and any third party working on University premises or any participant in a University-sponsored program or activity regardless of the location of the program or activity.

~~M.~~ **Policy:** – All written and published policies and regulations of the University. Reference USF Regulations and Policies for specific policies and regulations.

~~N.~~ **Preponderance of the Evidence:** – The evidence/information presented supports the finding that it is more likely than not that the conduct violation occurred. This standard is used in adjudicating all cases through the Student Conduct Process.

~~O.~~ **Student:** – Student is an individual admitted, enrolled, or registered for any University course or program, regardless of the medium of the course or program, or degree-seeking status, or when not enrolled or registered for a particular term, who is eligible to enroll in future terms without seeking readmission. A student who withdraws, is academically dismissed after allegedly violating the Student Code of Conduct or has a continuing relationship with the University is still considered a student. For the purpose of this Regulation, the term "student" may be interchangeable with "student organization" when the

term "student organization" is not directly specified.

~~P.~~**Student Organization**~~:~~ – A student group that is officially registered or recognized by the University, including, but not limited to, political groups, social groups, honor and professional societies, fraternities and sororities, and sport clubs.

~~Q.~~ **Temporary Restrictions**~~:~~ – Actions that SCED may take upon receipt of an incident report or during the Student Conduct Process. These actions may include, but are not limited to, interim suspension, a removal from on-campus housing, no contact orders, restrictions from clubs, events, and organizational activities, and/or restrictions from specific areas on University premises. Temporary restrictions may be amended or lifted throughout the Student Conduct process.

~~R.~~ **Transcript Overlay**~~:~~ – Notation on a student's academic transcript that states the student is not in good conduct standing resulting from suspension or expulsion.

~~S.~~ **University**~~:~~ – All campuses of the University of South Florida.

~~T.~~ **University Activity or University Program**~~:~~ - Any function or event that is hosted, sponsored, or organized by any University member when acting in their official capacity, group, or organization, including but not limited to, student organizations. This includes, but is not limited to, coursework and other academic activities, education abroad, field trips, retreats, social events, philanthropies, and community service events.

~~U.~~ **University Conduct Board**~~:~~ - A panel of faculty, staff, and students who have been trained to participate in the adjudication of student conduct cases.

~~V.~~ **University Official**~~:~~ – Any individual the University employs, contracts, or appoints to perform assigned teaching, research, administrative, professional, or other responsibilities (e.g., faculty, staff, administrators, student staff, USF Police).

~~W.~~ **University Premises**~~:~~ – Any building or property owned or controlled by the University within the same reasonably contiguous geographic area and used by the University in direct support of, or in a manner related to, the University's educational purposes, including residence halls; and any building or property that is within or reasonably contiguous to that previously described in this paragraph that is owned by the University, but that is controlled by another individual, is frequently used by students, and supports University purposes (e.g., a food or other retail vendor).

~~X.~~ **Will**~~:~~ – Used in the imperative sense.

~~Y.~~ **Witness:** – An individual with direct knowledge about or involvement in an alleged violation of the Student Code of Conduct.

~~Z.~~ **Written Notice:** –Communication regarding the student conduct process will be sent to the charged student or student organization, and in specific cases the complainant, by e-mail to their official University of South Florida e-mail address, which will be SCED's primary means of communication with students. The delivery of written notice through the official University email will constitute full and adequate notice under the Code. Students are responsible for all communications delivered to their University email address. Written notice to student organizations will be sent to the USF email address on file with the University. If the student is under 18 years of age, written notice will be sent to the student's parent or guardian.

## VI. CONDUCT VIOLATIONS

The behaviors outlined below are prohibited by this Regulation. The following conduct violations are broadly defined and are not exhaustive in terms.

**Aiding and Abetting**~~–~~

~~A.~~ The prompting, facilitating, or encouraging of others to violate standards of behavior.

~~B.~~ **Alcohol**

1. Possession or consumption of alcohol when under the legal drinking age as defined by Florida law.

2. Unlawful sale, distribution, and/or manufacturing of alcohol.

3. Public consumption and/or intoxication according to local ordinance.

4. Hosting or sponsoring a gathering at which the underage consumption of alcohol may or has occurred.

5. Control or operation of any mode of transportation while impaired by alcohol.

6. Use and/or possession of devices with the intent to use for rapid or excessive consumption of alcohol, including but not limited to funnels, ice luges, and beer bongs.

7. Possession and/or use of kegs, coolers, party balls and/or other common source containers.

8. Reporting to class, an organizational meeting or other University authorized event ~~that is specific to the educational mission~~ while under the influence of alcohol.

~~8.~~

9. Failure to abide by USF Policy 30-023 Alcohol & Drug Policy and all University protocols, state, and federal laws regarding alcohol.

~~C.~~ **Bribery** – ~~Offering~~Knowingly taking or ~~accepting a bribe~~making an offer, gift, receipt, or ~~inducement that would impinge upon~~solicitation of money, materials, goods, services, or ~~compromise~~anything of value by the ~~integrity of academic work,~~ student ~~performance,~~ or others for the ~~unbiased and professional duty of faculty, staff,~~purpose of procuring or ~~students of the University.~~providing an advantage to which they are not otherwise legally entitled.

~~D.~~ **Complicity** – To be associated with a violation of any University policy or regulation including, but not limited to, failure to remove oneself from the area or incident where a violation is being committed or attempted.

~~E.~~ **Damage to Property** ~~– Destruction~~– Intentional and/or unintentional destruction or vandalism of University buildings or property, private property, and/or personal property.

~~F.~~**Dating Violence –** Violence, on the basis of sex, committed by a person, who is in or has been in a social relationship of a romantic or intimate nature with the complainant. The existence of such a relationship shall be determined based on the complainant's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship. For the purposes of this definition, dating violence includes, but is not limited to, sexual or physical abuse or the threat of such abuse. Dating violence does not include acts covered under the definition of domestic violence~~.~~

~~G.~~ **Disruptive Conduct**

1. Actions and/or behaviors that disrupt, disturb, impair, or interfere with the processes and/or functions of the University or the rights of members of the University community.

2. Actions and/or behaviors that disrupt, disturb, impair, or interfere with the academic environment, and/or failure to abide by USF Regulation 3.025 Disruption of Academic Process.

3. Actions and/or behaviors that disrupt, disturb, impair, or interfere with the

freedom of movement and speech, and/or academic freedom of any member or guest of the University community.

4. Actions and/or behaviors that disrupt, disturb, impair, or interfere with the student conduct process.

5. Actions and/or behaviors that are disorderly, unruly, and/or disturb the peace.

**Distribution of Material and Solicitation**

1. Distribution of, including but not limited to handing out, stacking, and/or placing in racks, commercial material, or advertisements.

2. Commercial solicitation on University property without prior approval.

3. Distributing commercial literature of any kind on automobile windshields.

4. Posting of any commercial material.

5. Parking vehicles or constructing displays that have a predominant or primary commercial solicitation purpose on University property without appropriate approvals or the appropriate student or employee permit.

6. Use of the University email system or University email in violation of Policy 0-502 Appropriate Use of Information Technology Resources.

7. Failure to abide by USF Regulation 6.026 Distribution of Material and Solicitation on Campus.

~~H.~~ **Domestic Violence** – Violence, on the basis of sex, committed by a current or former spouse or intimate partner of the complainant, by a person with whom the complainant shares a child in common, or by a person who is cohabitating with, or has cohabitated with, the complainant as a spouse or intimate partner, or by a person similarly situated to a spouse of the complainant under the domestic or family violence laws of the state of Florida, or by any other person against an adult or youth complainant who is protected from that person's acts under the domestic or family violence laws of the state of Florida. To categorize an incident as domestic violence, the relationship between the respondent and complainant must be more than just two people living together as roommates. The people cohabitating must be current or former spouses or have an intimate relationship.

I. **Drugs** - Includes, but is not limited to, any narcotic, central nervous system stimulant, hallucinogenic, barbiturate, or other substance treated as such.

1. Misuse or illegal possession of a regulated or controlled substance.
2. Manufacturing, distributing, selling, or attempting to obtain any controlled substance that is prohibited by law.
3. Un-prescribed use, possession, distribution, selling, or attempting to obtain any prescription drug (one's own or another's) that is prohibited by laws.
4. Possession of paraphernalia used for the consumption and/or use of drugs that may include, but not limited to bongs, hookahs, rolling papers, baggies, scales, and pipes.
5. Knowingly inhaling or ingesting a substance (e.g., nitrous oxide, glue, paint, etc.) that may alter a student's mental state.
6. Control or operation of any mode of transportation while impaired by a regulated or controlled substance.
7. Reporting to class, an organizational meeting or other University event that is specific to the educational missionauthorized event while under the influence of drugs.
8. Failure to abide by USF Policy 0-610 Drug-Free Workplace and all University protocols, state, and federal laws regarding drugs.

**Failure to Comply—**

1. Failure to comply with an official request or lawful directive of alaw enforcement or a University Official acting within the scope of their assigned duties. This includes failing to comply with assigned sanctions and/or related University sanctions.

J.2. Failure to identify oneself or produce USF identification upon request by a University Official.

K. **False Information**

1. Knowingly withholding related information or making a false or misleading oral or written statement to the University and/or any University _Official.
2. Unauthorized alteration, possession, purchase, forgery, or misuse of any

document, record, or ~~instrument to be used as~~ form of identification~~ or as part of a request~~, including requests for support or excuse from academic assignment or other University service. The University has the right to authenticate or research the reliability of any document provided by a student or student organization.

3. Knowingly providing false or misleading information during proceedings under the Student Code of Conduct, including knowingly submitting a false complaint for any University process.

4. Failure to provide complete and accurate responses to the prior conduct section of the admissions application.

~~L.~~**Fire and Safety**

1. Inappropriate activation of any emergency warning equipment or the false reporting of any emergency.

2. Removing, damaging, interfering, or tampering with any fire safety equipment (e.g., smoke detectors, sprinklers, fire alarms).

3. Failure to evacuate during a fire alarm in any University facility or at any University event.

4. Engaging in action(s) that cause or attempt to cause a fire or explosion including but not limited to the release of chemicals or substances that can cause harm to another individual's health.

~~M.~~ **Gambling** – Engaging in or offering games of chance for the exchange of money or other gain that may be in violation of Florida laws.

~~N.~~ **Harassment** – Unwelcome conduct that a reasonable person would determine to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's education program or activity.

Bullying conduct that meets the standard for harassment set forth above is included in this violation and are not protected by freedom of expression.

Failure to abide by USF Policy 0-007 Diversity and Equal Opportunity - Discrimination and Harassment and all University protocols and federal/state laws regarding discrimination.

~~O.~~ **Hazing** - Any action or situation that recklessly or intentionally endangers the

mental or physical health or safety of an individual(s) for purposes of initiation and/or admission into, or association with and/or the perpetuation or furtherance of a tradition or ritual of any recognized student organization or non- affiliated organization. The consent or permission of the individual(s) does not eliminate responsibility.

1. Hazing includes, but is not limited to pressuring or coercing an individual(s) into violating state or federal laws; any brutality of a physical nature, such as whipping, beating, branding, exposure to the elements, forced consumption of any food, liquor, drug, or other substance, or other forced physical activity that could adversely affect the physical health or safety of an individual(s); or any activity that would subject an individual(s) to extreme mental stress, such as sleep deprivation, forced exclusion from social contact, forced conduct that could result in extreme embarrassment, or other forced activity that could adversely affect the mental health or dignity of an individual(s). Additionally, any hazing that results in permanent and/or serious bodily injury or death.

2. Soliciting an individual(s) to commit or is actively involved in the planning of any act of hazing.

~~2.~~

3. Failure to abide by USF Regulation 6.0023 Prohibition and Prevention of Hazing Regulation and all University protocols, state, and federal laws regarding hazing.

~~P.~~**Health and Safety** – Conduct non-compliant with University policies, guidelines, or directives related to the health and safety of the University community.

~~Q.~~ **Physical Violence**

1. Intentional touching or striking of an individual(s) against their will, or any action causing or attempting to cause potential damage, injury, or harm. This includes, but is not limited to, punching, slapping, scratching, or striking with one's body or with any object.

2. Unintentional touching or striking of an individual(s) against their will, or any action causing or attempting to cause potential damage, injury, or harm that is with conscious disregard for consequences.

~~R.~~ **Residence Hall Policies** – Failure to abide by any policy or regulation governing University Housing (e.g., rental agreement, Resident Handbook).

~~S.~~**Retaliation** – Words or action(s) taken against an individual because of the individual's participation in a protected activity that would discourage a reasonable person from engaging in a protected activity. Retaliation may include intimidation, threats, coercion, physical harm and/or adverse employment or educational actions. Protected activity includes an individual's

participation in the reporting, investigation, and/or resolution of an alleged violation of the Student Code of Conduct. Additionally, protected activity includes an individual's opposition to policies, practices and/or actions that the individual reasonably believes are in violation of the Student Code of ~~Code~~Conduct. Retaliation may be found even when an underlying report made in good faith was not substantiated. Retaliation may be committed by the charged student, the complainant, or any other individual or group of individuals.

~~T.~~ **Sexual Assault (defined as Sex Offenses, Forcible)** – Any sexual act directed against another individual, without the consent of the complainant, including instances in which the complainant is incapable of giving consent.

1. Forcible Rape: Penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person forcibly or against that person's will (non-consensually) or _in _instances_ in which the Complainant is incapable of giving consent.

2. Forcible Sodomy: Oral _or _anal _sexual _intercourse _with _another _person, forcibly or against that person's will (non-consensually) _or_ in _instances _in which the Complainant is incapable of giving consent.

3. Sexual Assault with an Object: _The _use _of _an _object _or _instrument _to penetrate, however slightly, the genital or anal opening of the body of another person _forcibly _or against that person's will_ or in instances in which the Complainant is incapable of giving consent.

4. Forcible Fondling: The touching of the private body parts of another person (buttocks, groin, breasts), for the purpose of sexual gratification, forcibly, or against that person's will (non-consensually), _or _when _the _Complainant_ is incapable of giving consent.

~~U.~~ **Sexual Exploitation** – Taking non-consensual or abusive sexual advantage of an individual for their own benefit or for the benefit of anyone other than the individual being exploited, and that the conduct does not otherwise constitute sexual harassment under this policy. Examples of sexual exploitation include~~,~~ but are not limited to:

1. Sexual voyeurism (such as observing or allowing others to observe an individual undressing or using the bathroom or engaging in sexual acts, without the consent of the individual being observed).

2. Invasion of sexual privacy.

3. Taking pictures, videos, or audio recording of another in a sexual act, or in any other sexually- related activity when there is a reasonable expectation of privacy during the activity, without the consent of all involved in the activity, or exceeding the boundaries of consent (such as allowing another individual to hide in a closet and observe sexual activity or disseminating sexual pictures without the photographed individual's' consent), including the making or posting of revenge pornography.

4. Prostituting another individual or solicitation of prostitution.

5. Engaging in sexual activity with another individual while knowingly infected with human immunodeficiency virus (HIV) or a sexually transmitted disease (STD) or infection (STI), without informing the other individual of the infection.

6. Causing or attempting to cause the incapacitation of another individual (through alcohol, drugs, or any other means) for the purpose of compromising that individual's ability to give consent to sexual activity, or for the purpose of making that individual vulnerable to non-consensual sexual activity.

7. Misappropriation of another individual's identity on apps, websites, or other venues designed for dating or sexual connections.

8. Forcing an individual to take an action against their will by threatening to show, post, or share information, video, audio, or an image that depicts the individual's nudity or sexual activity.

9. Knowingly soliciting a minor for sexual activity.

10. Engaging in sex trafficking.

11. Creation, possession, or dissemination of child pornography.

~~V.~~ **Sexual Harassment** – Conduct on the basis of sex/gender or that is sexual that satisfies one or more of the following:

1. Quid Pro Quo: A USF employee, conditions the provision of an aid, benefit, or service of the University, on an individual's participation in unwelcome sexual conduct. Refer to USF Policy 0-004 Sexual Misconduct/Sexual Harassment (Including Sexual Violence).

2. Unwelcome conduct, determined by a reasonable individual, to be so severe, and pervasive, and objectively offensive, that it effectively denies an individual equal access to the University's education program or activity.

~~W.~~ **Sex Offenses, Non-Forcible**

1. Incest - non-forcible sexual intercourse, between individuals who are related to each other, within the degrees wherein marriage is prohibited by Florida law.

2. Statutory Rape – non-forcible sexual intercourse, with an individual who is under the statutory age of consent as defined by Florida law.

~~X.~~ **Stalking –** Engaging in a course of conduct directed at a specific individual that would cause a reasonable individual to fear for the individual's safety, or the safety of others; or suffer substantial emotional distress. For the purposes of this definition, course of conduct means two or more acts, including, but not limited to, acts in which the charged student directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about an individual, or interferes with an individual's property. Reasonable person means a reasonable person under similar circumstances and similar identities to the complainant. Substantial emotional distress means significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling.

~~Y.~~ **Student Organization Misconduct** – Failure to abide by any University and/or department policy or protocol governing the operation of student organizations, sport clubs, teams, etc.

~~Z.~~ **Technology** – Improper use of technology hardware or software including but not limited to computers, e-mail, cell phones, video cameras, and drones.

1. Unauthorized downloading or facilitating others to download copyrighted music, films, and other documents without authorization.

2. Non-consensual recording of wire, oral, or electronic communication acquired by any device when such communication is uttered by an individual exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation (i.e., an individual has a reasonable expectation of privacy). University facilities, including but not limited to, classrooms, labs, and lecture halls during course delivery are not open to the public and students may not engage in recording class sessions except as provided by law.

3. Failure to abide by USF Policy 0-502 Appropriate Use of Information Technology Resources.

4. Failure to abide by USF Policy 6-036 Unmanned Aircraft (Drone) Operations.

~~AA.~~ **Theft** – Taking, attempting to take, or keeping ~~in its~~ possession of property or services not belonging to the ~~individual~~student or student organization.

~~BB.~~ **Threats of Violence** - A threat by word or act to do violence to an individual(s).

~~CC.~~ **Unauthorized Access and/or Use**

1. Unauthorized access or entry to University facilities or any property of any member of the University community without permission.

2. Duplication or use of University keys or access cards without permission.

3. Accessing, duplicating, photographing, altering, disseminating, and/or misusing any University material (including University intellectual property), files document or record, computer records, software, data files, and similar entities owned or maintained by any member of the University faculty, administration, staff, or student body.

4. Misuse of the official University brand to include, but not limited to the logo, mark, monogram, seal, or other graphic identity symbol.

5. Misuse of facilities in violation of any University Policy or Florida Law, including but not limited to willfully entering a restroom or changing facility designated for the opposite sex on campus, and refusing to depart when directed by a university official as defined in §553.865, Florida Statutes only with the exception of the following circumstances:
    a. to accompany a person of the opposite sex for the purpose of assisting or chaperoning a child under the age of 12, an elderly person, or a person with a disability;

    b. for law enforcement or governmental regulation purposes;

    c. for the purpose of rendering emergency medical assistance or to intervene in any other emergency situation where the health or safety of another person is at risk;

    d. for custodial, maintenance, or inspection purposes, provided that the restroom or changing facility is not in use; or

    e. if the appropriately designated restroom or changing facility is out of

order or under repair, and the restroom or changing facility designated for the opposite sex contains no person of the opposite sex.

f. For purposes of this conduct violation only, "sex" is defined pursuant to §553.865, Florida Statutes only.

~~DD.~~ **University Policy and/or Local Ordinance, State, or Federal Law (as determined by the University)** – Failure to adhere or abide by policies, including but not limited to, local ordinance, state law or federal law. ~~Adjudicating by an outside entity is not a prerequisite to a determination of responsibility by the University.~~

~~EE.~~ **Weapons, Firearms, or Explosive Devices** – The illegal possession, storage, use or sale of any weapon (lethal or non-lethal), firearm, ammunition, or any incendiary, explosive or destructive device. This includes, but is not limited to, fireworks, switchblade knives, air soft guns, dangerous chemicals, corrosive and/or biological chemicals, or agents as restricted by University policies and/or protocols. This also covers any item used as a weapon to cause actual physical harm or threaten physical harm. Reference USF Policy 6-009 Weapons on USF Property.

## VII. STUDENT CONDUCT PROCESS

### ~~A.~~ Filing an Incident Report

A student and student organization's conduct may be reported to SCED by any individual or entity for review of a potential conduct violation(s). A report may be submitted in writing using the designated referral form. Currently the form is the ~~Student Conduct and Ethical Development Referral Form.~~Student Conduct Incident Report.

Incident reports must be submitted within six (6) months following the incident or obtaining knowledge about the incident, whichever is later. Exceptions to this filing time include, but are not limited to, cases involving sexual harassment, dating violence, domestic violence, and stalking and may include other extraordinary cases, as determined by the Director of SCED, or designee.

All reported information will be reviewed by the Director of SCED, or designee, to determine appropriate next steps to include, but are not limited to, further fact gathering, issuance of charges, referral to another department, or an information meeting to

determine resolution of the report and potential conduct violations.

## ~~B.~~ Temporary Restrictions

Temporary restrictions may be issued to ensure a safe environment that promotes personal accountability and supports student success. SCED can issue temporary restrictions to any student ~~and~~or student organization involved in an incident, regardless of whether a determination of potential violations has been made. These may include, but are not limited to, interim suspension, removal from on-campus housing, no contact orders, restrictions from clubs, events, and organizational activities, and/or restrictions from specific areas on University premises. The student ~~and~~or student organization will receive written notice detailing the issued temporary restrictions.

The charged student's enrollment status will remain unchanged pending the outcome of a Formal Hearing, except in cases of interim suspension. The hearing outcome will indicate if enrollment status will be changed between written notice of outcome of a Formal Hearing and the conclusion of an Appeal, if applicable.

**Interim Suspension**

An interim suspension is an immediate temporary separation from the University. Conditions may include restriction from University premises (including temporary restriction from living on-campus), participation in academic endeavors, and University-related activities. Interim suspensions will be expedited through the Student Conduct Process.

An interim suspension may be imposed at the discretion of the Vice President for Student Success, or designee, to ensure one or all of the following:

1. The safety and well-being of members of the USF community or preservation of USF property.

2. The student's continued presence or the student organization's continued activities, or use of privileges, is not likely to pose an ongoing threat, disruption, or interference with the normal operation of USF.

When an interim suspension is imposed, the charged student or student organization will receive written notice to attend a scheduled Informational Meeting with a Hearing Officer. The written notice will include date, time, and location of the meeting, as well as the specific charges of violations of the Code, a brief description of the allegation(s), the conditions of interim suspension, and any other detail to prepare for the Student Conduct Process.

An Informational Meeting will occur (see Informational Meeting) and the Hearing Officer will review available information to determine if the interim suspension will remain, be modified, or lifted. The charged student or student organization will receive written notice within two (2) days after the Informational Meeting regarding the status of interim suspension.

If the charged student or student organization fails to attend the Informational Meeting, they will have waived their opportunity to participate in the Informational Meeting, and SCED will proceed with scheduling a Formal Hearing. The type of Formal Hearing forum will be determined based on the severity of charges and/or possible sanctions (e.g., suspension or expulsion).

If a charged student is placed on an interim suspension, but the charged student is subsequently found not responsible for the conduct violation, the University must:

1. Correct any record of the change in enrollment status in the charged student's permanent records, and report in a manner compliant with state and federal laws, and

2. Refund the charged student: a pro rata portion of any charges for tuition and out of-state fees, as appropriate, if the temporary revocation or suspension of the charged student's ability to attend classes lasts for more than ten (10) days.

In cases where the President determines that the health, safety, or welfare of the charged student or the University community is involved, a charged student's privileges within the University, including the ability to attend classes or engage in University activities, may be suspended on an interim basis.

### ~~C.~~ Issuance of Charges

The Director of SCED, or designee, will review the incident report to determine if further fact gathering is necessary or if sufficient information exists for the issuance of charges of violations of the Code. In general circumstances, a review of the incident report will be completed to make a determination to issue charges within fifteen (15) days of receipt of the incident report unless further fact gathering is determined necessary by the Director of SCED, or designee.

If sufficient information exists, the student and student organization will receive written notice of charges. The written notice will include date, time, and location of the Informational Meeting, as well as the specific charges of violations of the Code, a brief

description of the allegation(s), an invitation to attend an informational meeting, and any other detail to prepare for the Student Conduct Process-.

## D. Informational Meeting

The charged student or student organization, and in specific cases, complainant will be invited to attend an Informational Meeting with a Hearing Officer. An informational meeting is an opportunity for the Hearing Officer to explain the Student Conduct Process, due process rights, allegations, and charges, and review all available information supporting the charges of violations of the Code. Following the Informational Meeting, the Hearing Officer may collect additional relevant information regarding the incident. The charged student or, student organization, and in specific cases, complainant will receive written notice of and be provided the reasonable opportunity to review any relevant information gathered after the Informational Meetingno later than five (5) days prior to resolutionthe date of the Informational Meeting. This is a private meeting and will be closed to spectators, unless otherwise specified (e.g., advisor).

> A student or student organization, and in specific cases, complainant has up to three (3) days after the Informational Meeting to choose a resolution option. If the charged student or student organization fails to select a resolution option, SCED will proceed with scheduling a Formal Hearing. The type of Formal Hearing forum will be determined by the Director of SCED, or designee, based on the severity of charges, information gathered, and/or possible sanctions (e.g., suspension/expulsion).

If the charged student or student organization, and in specific cases, complainant fails to attend or re-schedule an informational meeting, they will have waived their opportunity to participate in an Informational Meeting, and SCED will proceed with scheduling a Formal Hearing. The type of Formal Hearing forum will be determined by the Director of SCED, or designee, based on the severity of charges and/or possible sanctions (e.g., suspension or expulsion).

## E. Due Process Rights

### 1. Charged Student/Student Organization

The charged student and student organization has the following rights during the Student Conduct Process:

1. To be accompanied by an advisor of their choice and expense throughout

the Student Conduct Process. For cases under the jurisdiction of USF Policy 0-004 Sexual Misconduct-Sexual Harassment, the University will appoint an advisor for the purpose of cross-examination during a Formal Hearing if one is not chosen.

a. 2. Written notice of the charges and allegations.

b. 3. A fair and impartial hearing.

c. 4. The right to presumption that no violation occurred. The burden of proof is on the University, and the standard of proof is the preponderance of the evidence.

d. 1. To be accompanied by an advisor of their choice and expense throughout the Student Conduct Process. For cases under the jurisdiction of Title IX of the Education Amendments of 1972, the University will appoint an advisor for the purpose of cross-examination during a Formal Hearing, if one is not chosen.

e. The opportunity to review all available information supporting the charges of violations of the Code, including all known witnesses who have or may provide information prior to resolution.

f. 5. The opportunity to present relevant information and witnesses at the Formal Hearing.

g. 6. To not provide self-incriminating testimony. Invoking the right against self-incrimination will not be considered as a negative factor in the decision of the Hearing Officer or Hearing Body.

7. The opportunity to review all available inculpatory and exculpatory information supporting the charges of violations of the Code, including all known witnesses who have or may provide information prior to resolution.

8. To receive written notice of the outcome of the selected resolution option within five (5) days of the Resolution Agreement or Formal Hearing.

h. 9. The opportunity to present and question witnesses and, in specific cases, complainants in accordance with the Formal Hearing procedure.

i. To receive written notice of the outcome of the Formal Hearing within five

(5) days of the hearing.

j.10. To submit a written appeal (See Appeal).

*In addition to the above, a charged student has the following rights in cases of alleged sexual harassment, stalking, and violence:*

a.11. The ability to request alternate arrangements for participation in the Formal Hearing via audio or live video from another location, and/or to participate in a manner that avoids direct contact with the complainant as long as such participation does not infringe on the charged student's right to question the complainant during the Formal Hearing or infringe on the implementation of Formal Hearing procedure.

b.12. To submit a written impact statement in advance of the Formal Hearing.

c.13. To not have prior sexual history considered, except for the testimony offered by the complainant or respondent about their shared sexual history that the panel deems relevant, when determining if a conduct violation has occurred.

2. Complainant

A complainant has the following rights during the Student Conduct Process:

1. To be accompanied by an advisor of their choice and expense throughout the Student Conduct Process. For cases under the jurisdiction of Title IX of the Education Amendments of 1972, the University will appoint an advisor for the purpose of cross-examination during a Formal Hearing, if one is not chosen.

a.2. Written notice of the charge(s)charges and allegations.

b.3. A fair and impartial hearing.

c. To be accompanied by an advisor of their choice and expense throughout the Student Conduct Process. For cases under the jurisdiction of Title IX of the Education Amendments of 1972, the University will appoint an advisor for the purpose of cross-examination during a Formal Hearing, if one is not chosen.

d. The opportunity to review all available information supporting the charges of violations of the Code, including all known witnesses who have or may provide information prior to resolution.

e. 4. The opportunity to present relevant information and witnesses at the Formal Hearing.

f. 5. To not provide self-incriminating testimony. Invoking the right against self-incrimination will not be considered as a negative factor in the decision of the Hearing Officer or Hearing Body.

g. 6. The opportunity to questionreview all available inculpatory and exculpatory information supporting the charges of violations of the Code, including all known witnesses and the charged student in accordancewho have or may provide information prior to the Formal Hearing procedureresolution.

h. 7. To receive written notice of the outcome of the Formal Hearing within five (5) days of the hearing.

8. The opportunity to present and question witnesses and the charged student in accordance with the Formal Hearing procedure.

i. 9. To submit a written appeal (See AppealsAppeal).

j. 10. The ability to request alternate arrangements for participation in the Formal Hearing via audio or live video from another location, and/or participate in a manner that avoids direct contact with the charged student as long as such participation does not infringe on the complainant's right to question the charged student during the Formal Hearing or infringe on the implementation of Formal Hearing procedure.

k. 11. To submit a written impact statement in advance of the Formal Hearing.

l. 12. To not have prior sexual history considered, except for the testimony offered by the complainant or respondent about their shared sexual history that the panel deems relevant, when determining if a conduct violation has occurred.

3. Advisor

The charged student, student organization, and in specific cases, complainant (unless the conduct violation is under the jurisdiction of Title IX of the Education Amendments of 1972) may be accompanied by an advisor of their choice and

expense throughout the Student Conduct Process with the following guidelines:

~~a.~~1. The advisor cannot have a potential conflict of interest between the University and/or the case or create an unreasonable conflict with the fair administration of the Student Conduct Process. For example, the advisor cannot serve in any other role, including as a witness, an investigator, decider of fact, hearing officer, member of a committee or panel convened to hear or decide the charge or any appeal.

~~b.~~2. The advisor may be present to advise the student and may participate in all aspects of the proceeding but shall not testify for the student. If the advisor is an advocate or legal representative, they must adhere to the same guidelines as any other advisor.

~~c.~~3. It is the student, student organization, and complainant's responsibility to make appropriate arrangements for their advisor to accompany them throughout the Student Conduct Process. The conduct process will not be delayed due to scheduling conflicts of the chosen advisor.

~~d.~~4. The advisor may be dismissed from the Student Conduct Process for failure to adhere to the parameters of their role. This dismissal will not affect the process, and all proceedings will continue.

In cases under the jurisdiction of Title IX of the Education Amendments of 1972, the charged student, student organization, and complainant may be accompanied by an advisor of their choice* throughout the Student Conduct Process. The following pertains to the role of the advisor in these specific cases.

The advisor must conduct cross-examination of the charged student, student organization, complainant, and witness(es). If the charged student, student organization, or complainant does not have an advisor of their choosing present at the Formal Hearing, the University shall appoint an advisor of the University's choosing for the sole purpose of conducting cross-examination. The University cannot guarantee the appointed advisor will be equal to the chosen advisor of the ~~charge~~charged student, student organization, or complainant. Specifically, should the ~~charge~~charged student, student organization, or complainant's chosen advisor be an attorney, the University is not obligated to appoint an advisor who is an attorney. A party may reject the University's appointment of an advisor, but they may not proceed without an advisor.

If the party's advisor will not conduct the cross-examination_, the University will appoint an advisor who will do so thoroughly, regardless of the participation or

non-participation of the advised party in the hearing itself.

**Choosing an advisor who is also a witness in the Student Conduct Process creates potential for bias and conflict of interest. A chargecharged student, student organization, or complainant who chooses an advisor who is also a witness can anticipate the issues of potential bias will be explored by the Hearing Officer/Hearing Body.*

**F. Resolution Options**

A student or student organization has the right to a resolution of any alleged violation of the Code through the Student Conduct Process unless waived as outlined below. The Student Conduct Process provides two resolution options. Cases involving allegations of sexual harassment, stalking, and violence will be resolved by a Formal Hearing, consistent with state and federal guidelines.

G.1. Resolution Agreement*

(except in cases that could result in separation from the University) Available when the charged student or student organization waives their right to a Formal Hearing and appeal, and requests that the Hearing Officer, conducting the Informational Meeting, determine the findings and applicable sanctions. The Hearing Officer reserves the right to collect additional relevant information to make an informed decision. The meeting will not be audio-recorded, and the written outcome will serve as the official record of the Resolution Agreement. The student or student organization will receive written notice of the outcome of the Resolution Agreement within five (5) days, except in the case of extraordinary circumstances. Written notice of the Resolution Agreement will include the determination regarding responsibility for conduct violations and applicable sanctions.

**Not available for cases that could result in removal from on-campus housing or separation from the University.*

If a Resolution Agreement is not signed, a student or student organization, and in specific cases, complainant has up to three (3) days after the Informational Meeting to choose a hearing forum. If the charged student or student organization fails to select a hearing forum, SCED will proceed with scheduling a Formal Hearing. The type of Formal Hearing forum will be determined by the Director of SCED, or designee, based on the severity of charges, information gathered, and/or possible sanctions (e.g., suspension/expulsion).

H.2. Formal Hearing

Formal Hearings include two types of forums: 1) Administrative Hearing and 2) University Conduct Board.

a. *Administrative Hearing*—

I. Conducted by a single Hearing Officer who serves as the Hearing Body. If the charged student elects an Administrative Hearing, the charged student waives their right to the University Conduct Board.

b. *University Conduct Board (UCB)*—

J.—Conducted by a panel which serves as the Hearing Body. The UCB consists of two (2) students and one (1) faculty or staff member. A non-voting Hearing Officer will moderate the hearing and be excluded from deliberations. If the charged student elects a University Conduct Board, the charged student waives their right to an Administrative Hearing.

The panel is selected from a pool of trained students, faculty, and staff who are members of the UCB. UCB members go through a formal recruitment, selection, and training process facilitated by SCED.

If the charged student or, in specific cases, the complainant fails to select a formal hearing forum, the formal hearing forum will be determined by the Director of SCED or designee, based on the severity of charges and/or possible sanctions (e.g. suspension/expulsion). If both parties do not agree on the hearing forum, the chosen hearing forum will be a University Conduct Board. This includes cases under the jurisdiction of USF Policy 0-004 Sexual Misconduct-Sexual Harassment.

## VIII. FORMAL HEARING PROCEDURES

### A. Scheduling

SCED will make a good-faith effort to schedule Formal Hearings around academic class schedules considering the availability of individuals involved in the hearing procedures and the normal operations of SCED.

### B. Hearing Notice

The charged student or student organization will receive written notice and access to relevant information no later than ten (10) days prior to the date of the Formal Hearing. The written notice will include date, time, and location of the hearing, as well as the specific charges of violations of the Code, a brief description of the allegation(s), names of witnesses to be called by the University, a list of available inculpatory and exculpatory information to be used in the hearing, an outline of the Formal Hearing proceeding, and the name(s) of the Hearing Officer and Hearing Body. In cases involving sexual harassment, stalking, and violence, or under the jurisdiction of ~~Title IX of the Education~~

~~Amendments of 1972,~~USF Policy 0-004 Sexual Misconduct-Sexual Harassment, the charged student or student organization, and complainant will receive similar written notice and access to relevant information no later than fifteen (15) days prior to the date of the Formal Hearing.-

**~~C.~~ Witnesses and Relevant Information**

The charged student or student organization can request the participation of additional witness(es) to provide relevant information during a Formal Hearing. The charged student or student organization must provide the names and email addresses of additional witnesses at least five (5) days prior to the hearing to the Hearing Officer. ~~Acceptance or denial~~The Hearing Officer may limit the participation of additional witnesses ~~is at the discretion of the Hearing Officer~~only if they are not relevant. Character witnesses or witnesses who cannot provide relevant information regarding the specific incident will not be permitted to participate in the Formal Hearing.

The charged student or student organization, and in specific cases, complainant is responsible for contacting and notifying additional witnesses they request to participate in the Formal Hearing. The Formal Hearing shall not be delayed due to a scheduling conflict of the witness.

In the event a witness is unable to participate in the scheduled Formal Hearing, the witness may submit a written statement at least five (5) days prior to the hearing to the Hearing Officer for consideration. A late witness statement submission will not be considered. The charged student or student organization, and in specific cases~~;~~ complainant, has the opportunity to respond to the written statement and may offer information to rebut the witness statement and other information presented at the Formal Hearing. The inability of the charged student or student organization, and in specific cases, complainant, to question a witness who has provided a written statement is not a violation of the charged student, student organization, or complainant's due process rights. If a submitted statement is deemed relevant, it will be considered during the Formal Hearing, as well as any existing relevant information submitted by the witness however may not be solely relied upon for determining responsibility by the Hearing Officer/Hearing Body. In absence of a submitted statement, any existing relevant information submitted by the witness would be considered during the Formal Hearing, however, may not be solely relied upon for determining responsibility by the Hearing Officer/Hearing Body.

The Hearing Officer may collect additional relevant information regarding the incident, after the Informational Meeting, if a Formal Hearing is the selected hearing forum. The charged student, student organization, or in specific cases, complainant ~~has~~will receive written notice of and be provided the opportunity to review all relevant information to

be used in the Formal Hearing supporting the charges of violations of the Code at least ten (10) days prior to the hearing. Relevant records, exhibits, and written statements may be submitted by the charged student or student organization for review ~~and acceptance to the Hearing Officer. Acceptance or denial~~ of ~~information is at the discretion of~~relevance by the Hearing Officer. Any information the charged student, student organization, or in specific cases the complainant intends to use must be submitted to SCED at least five (5) days prior the Formal Hearing, except in cases under the jurisdiction of Title IX of the Education Amendments of 1972, in which the information must be submitted at least ten (10) days prior to the Formal Hearing.

### ~~D.~~ Challenging Impartiality in a Formal Hearing

The charged student~~ or~~, student organization, or in specific cases, complainant may challenge the inclusion of any member of the Hearing Body. The challenge must be submitted in writing to the Director of SCED and must detail an actual bias (such as conflict of interest) that would significantly impact their right to a fair and impartial hearing. The challenge must be submitted at least five (5) days prior to the Formal Hearing. The Director of SCED, or designee, will review the challenge and make a final decision that is not appealable.

### ~~E.~~ Postponements

Any request to postpone a Formal Hearing must be submitted in writing by the charged student, student organization, or complainant to the Director of SCED as least five (5) days prior to the hearing. The request must state the reason(s) for the postponement. The Director of SCED, or designee, will review the request and make a final decision. The University is not required to postpone the Student Conduct Process pending the outcome of any civil or criminal case.

### ~~F.~~ Failure to Attend

If a charged student, student organization and in specific cases, complainant fails to attend a scheduled Formal Hearing, the hearing will occur, and an outcome will be made in their absence.

If a witness(es)/~~Complainant fail~~complainant fails to appear, statements given prior to the Formal Hearing may be reviewed at the Hearing in their absence; however, the statements may not be sufficient to determine a finding of responsibility.

### ~~G.~~ General Principles of Formal Hearings

The following general principles apply to all Formal Hearings regardless of hearing forum. The charged student or student organization and in specific cases, complainant will

receive information that outlines the Formal Hearing proceeding prior to the hearing.

1. Formal Hearings are private and will be closed to spectators, unless otherwise specified (e.g., advisor).

2. The burden of proof in a Formal Hearing is on the University. The standard of proof is the preponderance of the evidence. The finding of responsible or not responsible on the charges is solely based on the information presented at a Formal Hearing.

3. Formal Hearings, excluding deliberations, will be recorded by audio or video. The Formal Hearing may only be recorded by the University and the recording will be the property of the University.

4. Formal Hearings are not subject to the formal rules of evidence and procedures governing criminal and civil court proceedings.

5. A charged student or student organization and in specific cases, complainant have the opportunity to present relevant information.

6. No irrelevant information, including character statements, should be discussed, or considered in the Formal Hearing.

7. The Hearing Officer ~~has the discretion to~~ may limit the ~~number~~participation of witnesses ~~whose testimony may be redundant or~~only if they are not ~~in dispute.~~relevant.

8. The Hearing Officer ~~may limit the length of testimony and~~ may provide advice regarding the scope, direction, or tone of questioning.

9. For cases under the jurisdiction of Title IX of the Education Amendments of 1972, all cross-examination of the charged student, student organization, complainant, and witnesses must be conducted directly and orally by the individual's advisor. At the Formal Hearing, before the charged student, student organization, complainant, or witness can respond to a question posed by an advisor, the decision-maker(s) must first determine whether the question is relevant, and if not, explain the basis for disallowing the question.

10. Prior student conduct may ~~only~~ be considered in determining appropriate sanctions.

11. In cases involving multiple charged students, information presented at a Formal

Hearing may be used in a related case as long as all Formal Hearing procedures contained within the Code are satisfied.

12. The Hearing Body will make a recommendation of the decision and sanctions to the Hearing Officer. The Hearing Officer may adopt or modify the recommendation of the Hearing Body. If the recommendation is not adopted, the Hearing Officer will include the reason for modifying the recommendation in the Formal Hearing outcome letter.

13. The charged student or student organization and in specific cases, complainant will receive written notice of the formal hearing outcome within five (5) days of the Formal Hearing. The formal hearing outcome will include the determination regarding responsibility for conduct violations and applicable sanctions.

~~**H. Interim Suspension**~~

~~An interim suspension is an immediate temporary separation from the University. Conditions may include restriction from University premises, participation in academic endeavors, and University- related activities. Interim suspensions will be expedited through the Student Conduct Process.~~

~~An interim suspension may be imposed at the discretion of the Vice President for Student Success, or designee, to ensure one or all of the following:~~

1. ~~The safety and well being of members of the USF community or preservation of USF property;~~

2. ~~The student's continued presence or the student organization's continued activities, or use of privileges, is likely to pose an ongoing threat, disruption, or interference with the normal operation of USF.~~

~~When an interim suspension is imposed, the charged student or student organization will receive written notice to attend a scheduled Informational Meeting with a Hearing Officer. The written notice will include date, time, and location of the meeting, as well as the specific charges of violations of the Code, a brief description of the allegation(s), the conditions of interim suspension, and any other detail to prepare for the Student Conduct Process.~~

~~An Informational Meeting will occur (see Informational Meeting) and the Hearing Officer will review available information to determine if the interim suspension will remain, be modified, or lifted. The charged student or student organization will receive written notice within two (2) days after the Informational Meeting regarding the status of~~

~~interim suspension.~~

~~If the charged student or student organization fails to attend the Informational Meeting, they will have waived their opportunity to participate in the Informational Meeting, and SCED will proceed with scheduling a Formal Hearing. The type of Formal Hearing forum will be determined based on the severity of charges and/or possible sanctions (e.g., suspension or expulsion).~~

~~If a charged student is placed on an interim suspension, but the charged student is subsequently found not responsible for the conduct violation, the University must:~~

~~1. Correct any record of the change in enrollment status in the charged student's permanent records, and report in a manner compliant with state and federal laws; and~~

~~2.~~1. ~~Refund the charged student: a pro rata portion of any charges for tuition and out of state fees, as appropriate, if the temporary revocation or suspension of the charged student's ability to attend classes lasts for more than ten (10) days.~~

~~In cases where the President determines that the health, safety, or welfare of the charged student or the University community is involved, a charged student's privileges within the University, including the ability to attend classes or engage in University activities, may be suspended on an interim basis.~~

## IX. BASIS FOR APPEAL AND APPEAL PROCESS

The charged student or student organization and in specific cases, complainant may appeal in writing the outcome of a Formal Hearing within five (5) days of the date of the Formal Hearing outcome letter. The appeal must be in writing to the Dean of Students, or designee, and the burden of proof rests with the individual or organization appealing to clearly demonstrate the basis for appeal.

### ~~A.~~ Basis for Appeal

The basis for appeal includes:

1. A violation of due process rights or failure of the University to follow the Student Conduct Process established in this Code that substantially affected the outcome.

2. The introduction of new information that was not available and could not be presented at the time of the Formal Hearing. The individual appealing must demonstrate how the new information could have substantially affected the outcome. The ~~outcomes~~outcome of a criminal ~~or~~ /civil case or failure to attend

the Formal Hearing is not considered new information for the purpose of an appeal.

3. The severity of sanction(s) imposed was disproportionate to the responsible conduct violations. ~~Additionally, for cases under the jurisdiction of Title IX of the Education Amendments of 1972.~~

4. Additionally, for cases under the jurisdiction of Title IX of the Education Amendments of 1972: The Title IX Coordinator, investigators, or Hearing Officer/Hearing Body had a conflict of interest or bias for or against charged students or complainants generally or the specific charged student, student organization, or complainant that affected the outcome.

An appeal is not a rehearing of the conduct case and will not be accepted simply because the individual is dissatisfied with the outcome of the Formal Hearing.

### ~~B.~~ Appeal Process

The Dean of Students, or designee, will serve as the Appellate Officer for all appeals of the Student Conduct Process. The Appellate Officer will determine if there is sufficient information to substantiate the basis for appeal. If so, the Appellate Officer may either deny the appeal, therefore upholding the original outcome of the Formal Hearing, or do one of the following:

- If the basis of the appeal is that there was a violation of due process rights or failure to follow the Student Conduct Process which would have substantially affected the outcome, and the Appellate Officer accepts the appeal, the Appellate Officer may request the case be remanded for a new Formal Hearing.

- If the basis of the appeal is new information that could not be presented at the time of the Formal Hearing which would have substantially affected the outcome, and the Appellate Officer accepts the appeal, the Appellate Officer may request that the case be remanded for a new Formal Hearing.

- If the basis of the appeal is the severity of sanction(s) imposed was disproportionate to the responsible conduct violations, and the Appellate Officer accepts the appeal, the Appellate Officer may modify the sanction(s).

- ~~For cases of sexual harassment, stalking, and violence,~~For cases under the jurisdiction of USF Policy 0-004 Sexual Misconduct-Sexual Harassment, if the basis of the appeal is the Title IX Coordinator, investigators, or Hearing Officer/Hearing Body had a conflict of interest or bias for or against charged students or complainants

generally or the specific charged student, student organization, or complainant that affected the outcome, and the Appellate Officer accepts the appeal, the charged student, student organization, or complainant, and in specific cases, the Title IX Coordinator, investigators, and Hearing Officer/Hearing Body will be provided a copy of the submitted appeal and permitted up to five (5) days to submit a response to the Appellate Officer, if applicable. The Appellate Officer may request that the case be remanded for a new investigation, Formal Hearing, or modify the sanction(s).

- Except as required to explain the basis of new information, the review of an appeal is limited to the record of the Formal Hearing and supporting documents.

For cases under the jurisdiction of USF Policy 0-004 Sexual Misconduct-Sexual Harassment, the charged student, student organization, or complainant may submit a request to appeal the outcome of the Formal Hearing. The charged student, student organization, or complainant will be notified in writing when an appeal is received. The charged student, student organization, or complainant will be allowed to review and respond, in writing, to any information provided by the charged student, student organization, or complaint for the purpose of an appeal. The outcome of an appeal, for cases under the jurisdiction of USF Policy 0-004 Sexual Misconduct-Sexual Harassment, must be provided to the Title IX Coordinator.

- The charged student or student organization or in specific cases, complainant will receive a written notice of their appeal outcome within ten (10) days of receipt of the appeal, except in extraordinary circumstance as determined by the Dean of Students, or designee. The appeal outcome is the final University decision and there are no further internal University appeals.

- A student may seek outside judicial review pursuant to Florida Rule of Appellate Procedure 9.190(b)(3) of a final University decision. If a student seeks a review with the court, a copy of the petition must also be officially served to the University of South Florida Office of the General Counsel at 4202 E. Fowler Avenue, CGS 301, Tampa, Florida 33620-4301.

## X. SANCTIONS

Students and student organizations found responsible for conduct violations will be assigned sanctions. Sanctions will be commensurate with the responsible conduct violations ~~considering any mitigating circumstances, including but not limited to~~. The sanctioning may include consideration of the charged student or student organization's prior conduct record. Sanctions may be more severe for repetitive conduct. Assigned sanctions may include, but are not limited to:

~~A.~~ **Alcohol and/or Substance Use Education Sanctions** - Online educational modules, assessments, and/or meeting with a staff member. The charged student or student organization is responsible for any associated fee(s).

~~B.~~ **Assignments/Seminar/Workshops** – Requirement to attend, present, and/or participate in an in- person or online, workshop, module, and/or seminar. Written research assignments, behavioral reflection papers, or other educational activities may also be a requirement. These sanctions are intended to provide a student with opportunities ~~that~~to achieve specific learning objectives such as engaging in meaningful reflection on their behavior and the impact on others. The charged student or student organization is responsible for any associated fee.

~~C.~~ **Conduct Probation** – A specified period of time when the charged student or student organization is considered not in good conduct standing with the University. Conduct probation may result in restrictions of privileges and/or activities which may include, but are not limited to, being prohibited from participating in study abroad, serving in specific student leadership roles (e.g., resident assistant, student government). Conduct probation is a period of reflection on behavior and an opportunity to demonstrate satisfactory citizenship. Further conduct violations while on conduct probation may impact the severity of future sanctions.

~~D.~~ **Deferred Suspension** – A specified period of time in which suspension is temporarily withheld pending completion of other sanctions by a specified deadline and the demonstration of satisfactory citizenship. A student or student organization on deferred suspension is considered not in good conduct standing with the University. If the charged student or student organization fails to comply with assigned sanctions, the student or student organization will no longer be on deferred suspension and will be immediately suspended with no further appeal. Further conduct violations while on deferred suspension may impact the severity of future sanctions.

~~E.~~ **Expulsion** – Permanent separation from the University. The student or student organization is considered not in good conduct standing permanently with the University. The charged student and student organization will not have the ability to return as a student or student organization at any point in time. Expulsion ~~may~~will include a restrictive or no trespass order for all University premises, including on-campus housing. In cases where the sanction(s) determined by the Hearing Body includes expulsion, the charged student or student organization's privileges at the university, including the ability to attend classes and engage in university activities, will be revoked. A transcript overlay will be placed on the charged student's academic transcript and an administrative hold will be permanently placed on the student's account. A record of expulsion will be maintained in the student's permanent conduct file in Student Conduct and Ethical Development.

A student assigned this sanction may forfeit tuition, housing rent and fees, and other University fees. A student will be withdrawn from classes and forfeit academic credit accordingly. Students living in University Housing must contact Housing and Residential Education to determine the financial impact of the cancelled contract.

~~F.~~**Housing Restriction** – A specified period~~ of time~~ in which a student is restricted from living in and/or visiting all USF residential facilities (which may include dining halls), including the Greek Village. If applicable, a student may be financially liable for any costs associated with the restriction from living in on-campus housing as outlined in the Cancellation section of the University Student Housing Agreement or Greek Housing Agreement.

~~G.~~ **No Contact Order** – Official directive requesting a student refrain from making contact with another individual(s). Contact may include communication by telephone, in writing, electronically, by third party, or in person both on and off campus.

~~H.~~ **Restrictions** – Specific loss of privileges that may limit participation in student activities and University events or access and use of University premises, (e.g., athletic teams, leadership positions, certain buildings and/or locations).

~~I.~~ **Restitution** – Requirement to reimburse the University and/or an individual for the damage, destruction, or vandalism of University buildings or property, private property, and/or personal property. Restitution will be limited to the actual cost of repair or replacement.

~~J.~~ **Suspension** – Separation from the University for a specified period~~ of time~~. The student or student organization is considered not in good conduct standing during the period of suspension with the University. The student or student organization will not have the ability to return as a student or student organization until the end of the suspension. Suspension ~~may~~will include a restrictive or no trespass order for all University premises. In cases where the sanction(s) determined by the Hearing Body includes suspension, the charged student or student organization's privileges at the university, including the ability to attend classes and engage in university activities, may be revoked. A transcript overlay will be placed on the student's academic transcript, and an administrative hold will be placed on the student's account during the period of suspension. A record of suspension will be maintained in the student's permanent conduct file in Student Conduct and Ethical Development.

A student affected by this sanction may forfeit tuition, housing rent and fees, and other University fees. A student will be withdrawn from classes and forfeit academic credit

accordingly. Students living in University Housing must contact Housing and Residential Education to determine the financial impact of the cancelled contract.

~~K.~~ **Written Reprimand** – An official notice of conduct that is not in accordance with the University's standards of behavior. Further conduct violations may impact the severity of future sanctions.

## XI. AUXILIARY AIDS AND SERVICES

Students may request reasonable accommodations as required in Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. The student must be registered with the USF Student Accessibility Services and notify SCED in writing a minimum of three (3) days prior to a meeting or hearing.

## XII. PARENTAL NOTIFICATION

The University considers the student the primary contact for University communications and may restrict communication to the student only. SCED has the discretion to inform any parent or legal guardian of a dependent student under the age of 21 (as provided in USF Policy 30-020 Parental Notification Policy) when their student has been found responsible for a conduct violation in regard to the use or possession of alcohol or a controlled substance. A student whose parents or legal guardian are to be notified will be informed prior to such notification and given the opportunity to initiate contact with their parents, if and when possible.

## XIII. CONDUCT RECORD MAINTENANCE AND RETENTION

**A. Maintenance**

Student and student organization conduct records are maintained in SCED. Information protected under a privilege recognized by federal or state law cannot be disclosed, used, or relied upon unless the person who holds the right to exercise the privilege waives the application of the privilege.

1. All student conduct records in all formats (paper, computer, audio, etc.) resulting in formal charges will be kept in compliance with General Records Schedule GS5, but not for less than seven (7) years from the date of the last incident that the charged student or student organization was involved in that resulted in conduct charges.

2. If a student is suspended or expelled, a record of a violation of University regulations and/or policies will be permanently maintained in the student's or student organization's conduct file in SCED, and a record of separation may be

maintained in the Office of the Registrar.

3. SCED maintains all student conduct records in accordance with the Family Education Rights and Privacy Act (FERPA). SCED will abide by all laws requiring privacy with regard to the Student Conduct Process. In addition, as FERPA does not protect the names of students found responsible for crimes of violence, including forcible sex offenses, or an alleged perpetrator of a non-forcible sex offense when the allegations support a finding that a student has committed a violation of the University's rules or policies, the University may be required to release that information upon a Chapter 119 public record request.

4. A student may choose to sign a release form granting SCED staff permission to discuss information related to the ~~Student's~~student's disciplinary file with any individual that the student designates. This form is available in SCED. Although this form may provide access to information to a third party, the student remains the primary responsible party for compliance.

5. Any educational institution requesting conduct information about a current or former University student is required to submit the request in writing. If a non-educational agency is requesting information, those requests must include the signature of the student granting the release of information related to the student's conduct record.

6. Transcripts of recorded hearings may be prepared and provided by the University upon request by the student. The student may contact the Office of General Counsel to arrange for the preparation of the written transcript by a court reporting service on the student's behalf and at the expense of the requestor. The court reporting service will provide the transcript to the Office of the General Counsel, which will perform a confidentiality review of the transcript and redact any confidential or exempt information pursuant to state or federal law. The requestor will be responsible for the cost of the transcript preparation and confidentiality review.

**B. Retention**

1. Records resulting in an educational sanction of expulsion or suspension from the University will be permanently maintained in SCED.

2. No personally identifiable record(s) will be kept after a record has been designated for destruction. Statistical data will be maintained but all information that would identify an individual is removed.

3. All paper records will be destroyed by shredding or other similar process.

Computer files will be modified in a manner so that only statistical data that cannot identify an individual is kept. Non-–paper information (i.e., audio recordings) will be destroyed in a manner that will ensure that the information cannot be traced to any individual or any disciplinary case.

**C. Record Expungement**

Record expungement allows a student's conduct record on file with SCED to be sealed. This includes all information related to the student's documentation, investigation, hearing, and disposition. In general, when completing background check inquiries, expunged records will not be reported as an incident when the student was found responsible. The student will not need to report the record based on the language/definitions of the requesting institution or agency in a background check that the incident ever occurred. The record will still be used for federal, state, and local University reporting requirements but will not be associated with the student's name or student ID.

~~1.~~ *Eligibility*

If the student has only had one disciplinary incident during their enrollment, a request for expungement will be available for ~~consideration~~considerations:

~~a.~~ One year after the resolution of a conduct case or in the last term of enrollment,

~~b.~~ All assigned sanctions have been successfully completed,

~~c.~~ An expungement has not previously granted, and-

The conduct violation(s) did not:

~~a.~~1. Cause personal injury.

~~b.~~2. Cause significant property damage.

~~c.~~3. Include a drug violation that could qualify as a felony charge in the legal system.

~~d.~~4. Disrupt the orderly operation of the University.

~~e.~~5. Violate the firearm, explosives, dangerous chemicals, and ammunition or weaponry regulations of the University.

~~f.~~6. Involve behavior prohibited under Title IX of the Education Amendments of 1972, or any behavior related to sexual assault, sexual harassment, stalking, and/or sexual exploitation, no matter the

location of incident.

~~g.~~7. Result in a suspension or expulsion.

~~h.~~8. Occur within the last 30 calendar days.

**D. Petition Requirements**

A student meeting the eligibility requirements must submit their petition to the Dean of Students, or designee. The student must submit a ~~signed statement~~Dean of Student's Expungement Request explaining the justification for the request, a description of what occurred in the conduct incident, and what they learned from the incident. The ~~statement~~student must also include:

1. Student's name

~~2. University identification number (U number)~~

~~3.~~2. E-mail address

~~4.~~3. Phone number

~~5.~~4. Date of incident

~~6.~~5. ~~Incident report~~Case number

~~7.~~6. ~~Documentation~~Supporting documentation of an application to graduate or a signed letter from the student's academic advisor stating the intent to graduate and a list of all remaining coursework.

**E. Process**

The Dean of Students, or designee, will review the statement, the conduct record, and any other pertinent information they choose to request and/or consider. The decision is at the discretion of the Dean of Students, or designee. The student will receive written notice regarding their petition within ten (10) days of receipt of petition. The decision of the Dean of Students, or designee, regarding the expungement of the conduct record is final and not appealable. An expungement request may be submitted using the Dean of Student's Expungement Request Form.

## XIV. INTERPRETATION AND REVISION

This Regulation applies to all campuses of the University of South Florida; however, non-

substantive procedural modifications to reflect the particular circumstances of each campus are permitted. Any questions about the interpretation of the Code should be directed to any of the SCED offices:-

https://www.usf.edu/student-affairs/student-conduct-ethical-development/about-us/contacts.aspx-

The University reserves the right to make changes to the Student Code of Conduct as necessary. The Code shall be reviewed periodically by a committee which shall include student representation under the direction of the Director of SCED.

**HISTORY**

**Date Approved:** Sept. 23, 1985

**Substantively Amended:** Mar. 18, 2024, Aug. 24, 2021, Aug. 14, 2020, Jun. 2, 2020, Apr. 12, 2019, Sept. 28, 2018, Jan. 6, 2014, Dec. 2, 2013, Sept.22, 2011, Jun. 25, 2009, Jun. 5, 2008, Sept. 27, 2005, Apr.11, 1999, Dec. 29, 1994, Dec. 2, 1992, Jul. 26, 1992, May 27, 1992

**Technically Amended:** ~~Jan. 30, 2023,~~ Sept. 9, 2021, Aug. 26, 2019, May 16, 2019, May 6, 2019, Aug. 19, 2016, May 14, 2015, Jun. 23, 2014, Jan. 6, 2014

**Biennial Review:** Jan. 30, 2023

Other: Jul. 1, 2020 (Consolidation)

# EXHIBIT B

UNIVERSITY OF SOUTH FLORIDA

POLICY

**Number:** 6-028
**Title:** Events, Signage and Space Management
**Responsible Office:** Administrative Services

**Date of Origin:** 2-13-17 **Date Last Amended:** 1-23-24 Date Last Reviewed: 1-23-24

## I. PURPOSE & INTENT:

The University of South Florida (USF) has the responsibility to create and maintain an environment which will promote the educational goals and objectives of the institution. Therefore, it is within these rights and responsibilities that this Policy with regard to specific commercial and non-commercial activity, signage, and related use, in USF open space is established.

## II. STATEMENT OF POLICY:

This Policy establishes parameters for the use of open space to ensure the safety of the USF community while supporting the open exchange of ideas and the engagement of the university campus. This Policy shall be applied in a manner to ensure compliance with the most recent applicable state and federal law. The University reserves the right to cancel or place restrictions on events to protect the safety of the campus as determined by other University Regulations or Policies, University Emergency Services or to comply with an emergency order or restriction by the University or government agency with oversight responsibility.

## III. APPLICABILITY & AUTHORITY:

This Policy will be enforced by USF campuses and the respective branch campus law enforcement as necessary. Links for reference are listed below.

## IV. DEFINITIONS OF TERMS

- **Affiliated Groups**: Entities that have a written contracting relationship with the University that defines the official relationship.

- **Departments**: Offices or specific administrative departments with direct budgetary support or specific recognition by the University as an official USF Department or group.

- **Event**: A scheduled activity, other than a University planned or sponsored program that is delivered by the University such as an academic class, lecture, athletic team competition, academic performance, or administrative activity such as graduation or orientation, which is open for the public to attend or participate including but not limited to exhibitions, expositions, fairs, festivals, entertainment, cause-related, fundraising, leisure activity. An activity that is publicized by any communication means that is not limited to the USF community is considered an event. An event may be one-time or periodic, free, or ticketed. Events require review to ensure appropriate allocation of university business, resources, and personnel as required for the safe operation and mission of the university.

- **Facilities Management ("FM"):** Facilities Management is a part of Administrative Services with responsibility for campus planning, development, maintenance, enhancement, safety, and the operation of USF's buildings, grounds, and utilities.

- **Fronting**: The unauthorized use of space by a student organization which includes permitting an outside organization to use university space without approval, student organization sponsorship and participation.

- **Instructional Space:** The areas, buildings and outdoor space that are used primarily for academic purposes including curriculum, research such as buildings containing classrooms, auditoriums, laboratories, faculty offices, University buildings, and other facilities that further the university's academic mission, such as libraries, study areas, medical centers, clinical facilities, and hospitals. Outdoor space on campus that is being used for academic purposes including outdoor areas adjacent to other Instructional Space when the proposed non-academic use of such outdoor area would interfere, as the University determines, with the University's use of the adjacent Instructional Space.

- **Non-University Entity**: Entities that are independent or not officially recognized by the University.

- **Open Space:** Areas open to the general public and not primarily used for instructional academic purposes (see Instructional Space).

- **Student Organization**: A student group officially recognized by USF (Please see USF Regulation 6.017 Student Organizations).

- **Student Organization Designee**: The person designated by the student organization to coordinate and plan the student organization event.

- **Student Sponsored**: To be considered Student Sponsored, an event, person, or group ("group") must be invited on to campus by a student organization. The Student Organization and group must mutually understand that members of the Student Organization will be actively involved, present at all times and will be responsible for related actions and financial obligations.

- **University Entity**: Entities that are officially recognized by USF through registration, agreement, or designation.

## V. PROCESS STEPS/SPECIFIC PROVISIONS:

### A. Commercial Activity

USF defines commercial solicitation and sales as offering goods or services for sale either by advertising or direct sale that results in financial gain to the person selling the items or to a business or an organization. USF authorizes commercial solicitation by external organizations only through formal written contractual relationships. Commercial solicitation or the sale of goods and services by external organizations is otherwise regulated by USF Regulation 6.026 – Distribution of Material and Solicitation on Campus.

1. Door-to-door solicitation is not permitted, including solicitation in USF housing and residence halls.

2. The USF President may delegate the authority to the Purchasing Department to enter into written contractual agreements with external organizations permitting the solicitation and/or sale of goods and services when (a) it is in the best interest of USF; (b) when it is appropriate to provide convenient goods or services for faculty, staff, and students; and (c) when the goods or services support the educational mission of USF. Guidelines for this process are set forth below:

   a. The standard commercial solicitation or activity form shall be used to reflect the terms and conditions of all written contractual agreements permitting the solicitation and/or sales of goods and services and require authorized signatures and approval by the appropriate responsible officer. The contract form must be obtained from the appropriate facility manager.

   b. Upon determination by a USF Vice President or Regional Chancellor or facility manager that USF desires to permit solicitation or sale of particular goods or services on their respective branch campuses, the Director of Purchasing & Property Services or the Director's designee shall be consulted to determine if a procurement means other than the form agreement should be employed.

**c.** External or internal organizations or individuals desiring to solicit or sell goods or services on a periodic basis on the Tampa campus may do so only at the USF Bull Market and Bookstore Corral located under the SVC Canopy, conditioned upon application to and approval by the Director of the Marshall Student Center, Marshall Student Center Administrative Office (MSC 4100 #813-974-5002). Large university organizations with primary responsibility for contracts and agreements, including but not limited to Food Services and Auxiliary Services can be exempted from this requirement (IV-A-3.-C). Each branch campus will determine its own time and place restrictions of the solicitation and sale of goods or services.

**d.** Students, student organizations, individual faculty, individual staff, or individual members of the USF community shall not serve as agents or sales representatives on the campus for external organizations.

**e.** At the Tampa campus, all fundraising or commercial promotional activities planned by student organizations shall be reviewed and approved in accordance with USF Policy 30-016 - Student Events Management.

**f.** Fundraising and promotional activities by employees and USF departments shall be reviewed and approved by the appropriate Vice President.

**g.** Enforcement: Any goods or property displaced, sold, or used on a USF campus for commercial purposes without appropriate authorization for the commercial communication, including but not limited to the actual sold property, goods, or any structure/bicycle/vehicle/physical frame upon which any commercial literature is displayed, may be discarded, or impounded by the appropriate University department. Impounded property may be destroyed or sold at auction with costs assessed against the responsible party named in the literature or against the owner of the goods or property. To avoid sale at auction the owner may take appropriate action which may include:

- The owner provides proof that the property is not contraband.
- The owner makes an agreement with the University to sell the goods on campus; or
- The owner secures a court order for release of the property.

**B. Non-Commercial Activity**

**1. Permitted Non-Commercial Activity**

Non-commercial activities other than Events are permitted in USF Open Space locations that are open to the general public and which are consistent with the following general guidelines. Non-commercial activities (in this section "Activity") include but are not limited to verbal and written communications, such as speeches, petitions, and demonstrations pertaining to non-commercial information. These guidelines are to be applied in conjunction with the additional restrictions and/or parameters as referenced in this Policy:

**a.** Non-commercial activities are permitted in USF Open Space . Instructional Space, waiting areas, or businesses inside Instructional Spaces used by persons in lines/queues for sales of products, events, or persons attending academic classes that may be held outdoors will be considered a USF Instructional Space.

**b.** The Activity must comply with the building, department, campus or organization's specific guidelines, college or University policy or regulation and state or federal law.

**c.** The Activity must not disrupt the University's mission or business nor impede or block sidewalks, building entrances or other areas for normal traffic flow. In areas that require permits or reservations, appropriate paperwork must be completed and approved. Specific permits and insurance may be required depending on the extent of the use.

**d.** Amplified sound is not permitted on campus except as provided in section H. below.

**C. Signage**

With the exception of handheld signage and unattached and properly weighted A-frame signage not exceeding 4' x 3' in size, only students, student organizations or University departments may place signage on University property and such signage must adhere to the following guidelines. Any non-compliant signage will be removed, and costs of removal or cleanup assessed back to the person/organization whose name appears on the signage and/or the person placing the signage.

1. Exterior Signs
   a. Signs and notices are to be placed only on authorized boards, A-frames, or in door card holders, except as provided herein. No signs are to be attached to any building, tree, or light post except as designated herein. Signs may not be placed on walls, doors, or windows by means of tacks, tape, or adhesives. Any exceptions require an approved Space Impact Form (Tampa) or a Space Modification Request (University of South Florida-St. Petersburg).

   b. For any major student-related activity (Homecoming, Greek Week, etc.), a maximum of six large non-electrical signs, not to exceed four feet (4') in width and not to have an overall height of more than eight feet (8') may be displayed.

   c. At the Tampa campus, the Director of the Marshall Student Center or his/her designee must approve in writing the plans for construction, placement, and removal of all such signs (see copy of Temporary Campus Signage Request Form). Copies of all approvals for the Tampa campus are to be sent to the Facilities Management ("FM"). Non-fabric signs that are more than four feet (4') by eight feet (8') must be approved by FM for quality of construction.

   d. Student Government election posters or signs not exceeding four feet (4') by eight feet (8') may be utilized 15 days before election day plus an additional seven days for runoffs. At the Tampa campus, they may be located only in designated areas as shown on the attached listing entitled Authorized Locations for Signs.

   e. Signs should not be placed in a manner which would block a driver or pedestrian's view at any time or any location. Signs placed along the roadway must be placed a minimum of 30 feet (30') from an intersection. They must not block any passageway, obstruct any buildings, signs, or other structures, or otherwise unreasonably distract or interfere with others in carrying out their normal functions and must be removed immediately following the scheduled event. The FM office may be consulted when there are any questions concerning the desired location of a sign.

f. Directional Signs: Directional signs for meeting, conferences and events being held may be posted at specific locations and must be approved by the FM. The FM must approve the type, size, location, duration, and count of signs.

g. Parking Signs: All parking related signs, including permanent, directional, event signs or signs to inform of changes in parking designations may be posted after approval by the Parking and Transportation Services Division.

h. Event Signage at Tampa Campus: All event signage requests must go through the Space Impact Process. Requests for event signage at the Tampa campus must include a Space Impact Form, and in the case of student events, a Temporary Campus Signage Request Form may also be required. Exception to this is signage posted inside the Marshall Student Center or on MSC controlled grounds.

2. Interior Signs
    a. Small signs (under 8"x11") may be posted on designated bulletin boards and must be approved by the appropriate Building Supervisor unless it is clearly an open posting board.

    b. All persons wishing to post materials in a USF building must receive prior approval from the person responsible for supervision of the affected building and/or contact the appropriate Building Supervisor for additional information. USF students, student organizations, faculty and staff will be given priority over non-USF persons and entities.

3. Designated Locations for Signs Meeting University Guidelines as set forth in this Policy
The list for designated areas for signage on the Tampa campus can be obtained from The Center for Student Involvement.

4. Enforcement
Signs that are improperly constructed, placed, or allowed to deteriorate into a state of disrepair may be removed immediately by the FM or by the Parking and Transportation Services Division. Violations of this Policy may be reported for sanctions or legal action.

5. Permanent Sign
See USF Policy 6-022 - Campus Design & Construction Program.

**D. Displays and Exhibits**

1. Displays and Exhibits need prior approval using the Event Request process or Space Impact process (see W below).

2. Sponsors of displays and exhibits that require interaction and/or participation from bystanders/individuals must ensure that a USF student or employee is present and responsible for the display or exhibit at all times.

3. USF groups that are co-sponsoring an event, display, or exhibit with a non-USF organization shall be responsible for the event. A USF student, employee, or staff member must be always with the display along with a representative of the co-sponsoring organizations. In addition, the USF group must post a sign that is visible to the public and identifies the student organization as the sponsor of the event.

4. Displays and exhibits on lawns must be weighed down with water bags or sandbags. No staking is permitted. Exceptions to this Policy must be approved by the Space Impact process.

5. USF is not responsible for displays or exhibits that are damaged or stolen.

6. A sponsoring group must obtain prior approval from FM, if they drive on surfaces that are not roads or parking lots to deliver a display. Once the display is dropped off, the delivery vehicle must come back at the end of the reservation period to pick up the display. If the delivery vehicle is an over-sized vehicle, it may only be parked on campus with a special permit obtained from Parking and Transportation. Average sized vehicles may park in the designated visitor parking areas, but will require parking permit. USF is not responsible for setting up or taking down displays or exhibits.

7. Vehicles on display must remain parked within the designated area assigned to them. Vehicle engines must remain off while on display.

**E. Tents**

1. At the Tampa campus, USF student organizations and departments along with their co-sponsoring groups may set up tents outdoors during their events. Tents are the responsibility of the sponsoring organization. Tents may be on campus only between the hours of 7:00am and 5:00pm. Tents may not be left out overnight. Exceptions to this Policy are the large tents approved for use through the Space Impact Form process. At least one member of the USF sponsoring group must stay with the tent at all times.

2. USF is not responsible for moving tents.

3. USF is not responsible for tents that are damaged, missing or stolen.

**F. Advertising**

Events are not permitted to be advertised until final confirmation for space is secured from the appropriate scheduling entity. Event sponsors must comply with USF Policy 0-215 - Use of USF Name and Symbols regarding use of logo. Any use of space that includes advertising to persons outside of the University will be considered an event.

**G. Security and Safety**

1. Any speaker or performer is responsible for following University policy or regulation.

2. All event planners are expected to provide a safe environment for their events and may be required to utilize the University Police Department services and/or security at events.

3. Any event request may be referred to the University Policy Department (UP) for review and assessment of security needs (see section W (1) & (2) of this policy). The University Police Department is the designated office responsible for making a final determination of adequate security needs at events. The security-related costs will be incurred by the event sponsor(s).

**H. Volume of Spoken Words, Sound and/or Music and Restrictions on Amplification**

1. <u>General</u>

   The use of amplified sound or elevated voices/volume on any campus must be in conformity with this Policy. Groups or individuals have a duty and obligation to control the level of sound so that their programs, activities, or presentations do not disturb classes or unduly hinder other members of the university community from engaging in their tasks or activities or from

enjoying their right to privacy within their living, working, or social spaces. The sound level of any communication must be limited to what is necessary for the event without excessive intrusion or interruption in adjacent areas. In addition to abiding by the guidelines in this Policy, persons must abide by the county and state law and local ordinances regarding noise pollution as defined by Section 403.031(7), Florida Statutes. The University Facilities/Building Managers, Faculty or other University administrators may request sound levels to be reduced to eliminate a disruption or interference with University process and mission. The University Environmental Health and Safety Division or other law enforcement agency may determine if there is a state or county violation.

2. Amplification of Sound

No amplification of sound is permitted except as follows:

a. Any amplification must be at an acceptable distance from academic or administrative buildings as determined by the approving entity or designated representative. Only a University related group or organization will be permitted to use amplified sound in any area. Student organizations must go through the appropriate campus process.

3. At the Tampa campus, student organizations must go through the Student Events Management process described in USF Policy 30-016 Student Events Management and all other University related groups or organizations must go through the Event Request Form. Generally, amplified sound may only be permitted in the following designated areas, however, space and contact information may change, please contact FM for the most up to date locations:

| **Outdoor Space for Amplified Sound** | **Appropriate Contact** |
|---|---|
| Andros | Housing |
| Argos | Housing |
| Greek Village | Housing |
| Crescent Hill | Marshall Student Center |
| Martin Luther King West Plaza | Marshall Student Center |
| Fowler Field | Campus Recreation |
| Intramural Field | Campus Recreation |
| Athletic Facilities | Athletics |
| Marshall Student Center Plaza | Marshall Student Center |
| Riverfront Park | Student Affairs |

**I. Food**

It is strongly encouraged that event planners providing food at their event utilize USF Dining services, including catering, dining halls and national brands food options. Permission to bring food into the Marshall Student Center for events must be approved by the Marshall Student Center. The event planner may be required to check with the University's Environmental Health & Safety Office for food serving guidelines.

**J. Alcohol**

Refer to the USF Policy 30-023 – Alcohol Policy

**K. Physical Structure**

USF reserves the right to restrict signage, tables, placement, direction and/or technological equipment through its event review process.

**L. Buildings, Supervision and Control**

The Building Manager or /Facility Management's authority include the ability to request a disruptive person outside the building to leave the premises pursuant to USF Regulation 4.0140 No Trespass and Loitering.

**M. Contracted Events**

Event planners should secure a finalized written event confirmation confirming reservations prior to final execution of any contracted services. Any signed contracts resulting in increased costs to the university will be assessed to the event planner.

**N. Force Majeure**

Event planners should ensure that a Force Majeure statement is included in all finalized and executed contracts to protect the university and the event planner.

**O. DVD/Video/Music/Video Game/Intellectual Property Usage**

Federal copyright law restricts the use of material protected under Intellectual Property rights for private showings and prohibits their public performance without written consent of the holder of the copyright. A physical license from an approved booking agency is required prior to the start of the event. Failure to produce the license will result in the cancellation of the event and application of cancellation fees.

**P. Outdoor Space**

1. Outdoor areas of the campus not connected to a specific use and considered open to the public, may be used for informal, unscheduled, and unamplified expression of opinion or musical event by person participating as individuals without registration or approval. By using the space, the individuals assume all

responsibility for the direct and indirect impact of their speech or conduct and must abide by all University policies and regulations.

2. Events as defined in this Policy require specific approval. Event planners who choose to exercise their rights should understand that such rights are not unlimited at the university. The university has an obligation to protect the rights of others and maintain the ability to conduct university business.

3. University Student Organizations or Departments may request permission for overnight activities and such requests will be subject to review and require approval. Any overnight activity may be assessed additional costs for health and safety needs based on review by University Police, Environmental Health and Safety, and FM. University entities wishing to use the University outdoor spaces and/or indoor venues must secure permission from the appropriate facility manager prior to their reservation. This may involve the use of the Space Impact Request process or the Event Request process and may require additional or specific insurance to be secured by the requestor.

4. Non-University entities are not allowed to host overnight events occurring at outdoor venues.

**Q. Fundraising (for philanthropic reasons)**

1. If proceeds of a fundraising activity are for an external entity, the event sponsor must display and advertise the name of the philanthropic agency and the percentage of funds to be donated to the agency.

2. The university understands the importance of fundraising activities but cannot absorb costs associated with executing the event. The event planner is responsible for associated costs incurred.

**R. Banners**

At the Marshall Student Center, banner space outdoors is only available at the Student Center balcony. Contact Marshall Student Center Administrative Office (MSC 4100 #813-974-5002). For banners in other locations at the Tampa campus, a Space Impact Form is necessary.

**S. Chalking**

Only student organizations or USF departments that are promoting University or Student sponsored events are permitted to chalk to promote their events. Chalking may not be used for commercial advertisement or commercial purposes. In general chalking is to be done only on sidewalks. Chalking is prohibited on buildings, stairways,

walls, fountains, covered walkways, breezeways, or other surfaces not designated for this purpose. Chalk sprays, markers, stencils, or paint of any kind are NOT PERMITTED.

**T. Recycle**

Groups that sponsor events outdoors on campus are responsible for minimizing their waste stream. Recycle containers must be used at all outdoor events. To request recycling containers at the Tampa campus please go to http://www.usf.edu/administrative-services/facilities/requests/event-request.aspx or contact the FM Service Center at 813-974-2845. To request recycling containers at USFSP, please go to https://www.usf.edu/administrative-services/facilities/requests/index.aspx or contact Facilities Services ("FS") for additional information.

**U. Trash**

It is the financial responsibility of the group sponsoring the event to have the space cleaned up. Trash bags must be taken to nearby dumpsters. Please determine ahead of time if you will need additional trash containers and then request them from the FM Service Center at 813-974-2845. To request clean up service at USF from FM for events please contact the FM Service Center at 813-974-2845. To request clean up services at USFSP from FS, please go to www.usfsp.edu/workrequest or contact FS for additional information.

**V. Distribution of Literature**

1. The distribution of literature is regulated by USF Regulation 6.026 – Distribution of Material and Solicitation on Campus. USF prohibits (1) the posting, distributing, stacking or placement in racks of any commercial material or advertisements and (2) attaching commercial material or advertisements to automobiles, fixtures, bicycles or any permanent or temporary physical structure not directly related to University business without specific approval as provided in this Policy or USF regulations and policies including USF Regulation 4.0010 – Parking General Guidelines, Registration, Rates, and Penalties and USF Policy 6-035 – Abandoned Vehicles. Any commercial material, publication or automobile, fixture, bicycle or any permanent or temporary physical structure used in violation of this Policy will be removed, destroyed, or impounded at the discretion of the University Police Department. All costs incurred in the enforcement of this Policy will be the responsibility of the commercial entity (1) distributing or posting the literature and/or (2) whose name appears on the commercial literature. Additionally, no material of any kind, commercial or non-commercial, may be placed on automobile windshields. Other non-commercial material or literature may be

handed out in any outdoor USF location open to the general public. Student organizations are not permitted to distribute literature, which advertises events on or off campus where alcohol will be sold or given away. Student organizations have a responsibility to distribute materials in an appropriate manner so that it does not litter the campus. Posting is not permitted on trees, poles, fences, sidewalks, or buildings.

2. Failure to adhere to the guidelines for the distribution of literature will be addressed as follows:
    a. Non-USF entities are subject to being restricted from campus and may be issued a no-trespass warning by the respective campus policing authority. Non- USF entities will also be subject to fines and other appropriate sanctions.

    b. Students and student organizations will be referred to the Office of Student Rights & Responsibilities (Tampa campus) for violations of the Code of Student Conduct, or the respective student conduct office at each branch campus.

    c. Any person, entity, or student organization responsible for violating this policy or littering in any fashion will be held responsible for conducting clean-up for any materials on campus and the associated costs.

3. Restrictions on Email Use: USF Information Technology may restrict the unauthorized use of the USF email addresses or system for commercial solicitation purposes including blocking commercial solicitation or other use of email prohibited by USF Policy 0-502 – Appropriate Use of Information Technology Resources.

**W. Events**

Adherence to all Regulations and Policies regarding Student Conduct, Reservation of Space and standards for Student Organizations will be required including but not limited to Student Organizations Event and Meeting Services Policies and University Departments Event and Meeting Services Policies. The following information is specific to the Tampa campus. For information regarding student events management at USFSP, please see USF Policy 30-016 – Student Events Management.

1. Student Sponsored Events

    Refer to USF Policy 30-016 - Student Events Management.

2. Event Request Process (For Use of Space)
All persons or organizations including Departments or Student Organizations seeking to request an event approval must make a request for the use of space (1) directly from a designated office as indicated on the Event Request Process (noting that events sponsored by a student or student organization on the USF Tampa Campus will follow the Student Events Management Policy); or (2) to the USF Facilities Management Office using the Event Request Form). As per section G (3) of this Policy, any event request may be referred to the UP for review and assessment of security needs. Events that include one or more of the following elements will be referred to the UP for review:
    - advertised and open to the public
    - expected to have a head count near or exceeding space capacity
    - known to have a history or instances of behavior not consistent with USF Regulations and Policies
    - anticipated to include cash or exchange of goods, minors in attendance or alcohol

The FM or their designee or the appropriate Student Affairs administrator will advise the requestor of the decision of the University and any related security costs and requirements. The event sponsor will be responsible for any additional insurance and for any cost of security or impact on the USF property. Details regarding this this process may be found at http://www.pplant.usf.edu/index.php/areas-and-services/space-impact-process.

3. Space Impact Process (for Modification of Space)
Departments or Persons seeking approval to modify University space must submit a Space Impact Form to USF Facilities Management Office (http://www.usf.edu/administrative-services/facilities/index.aspx) to request modification to university space and that FM will provide a response to the Requestor. Typically, this process is issued for:
    - Adding/modifying signage
    - Renovating/remodeling space (excludes routine maintenance)
    - Adding temporary space (e.g., trailers)
    - Locating aesthetic items (e.g., sculptures, trees, banners, etc.)

**X. Response to Violations**

1. Any person or University official (defined in USF Regulation 4.0140 – No Trespass and Loitering) may request a person in violation of this Policy to cease the violation or to leave the premises. If the person does not cease the

violation or leave the premises, the person may receive an NTO, or be subject to appropriate law enforcement action. University Police may respond directly for immediate safety issues and/or may be contacted by either Student Affairs or the Building Manager/Facility Manager as needed.

## VI. LINKS FOR REFERENCE

- USF Regulation 4.0010 – Parking General Guidelines, Registration, Rates, and Penalties
- USF Regulation 4.0140 No Trespass and Loitering
- USF Regulation 6.026 – Distribution of Material and Solicitation on Campus
- USF Policy 0-215 - Use of USF Name and Symbols
- USF Policy 0-502 – Appropriate Use of Information Technology Resources
- USF Policy 0-505 - Use of University Space (All-Inclusive)
- USF Policy 6-012 – Access Control to Buildings and Facilities
- USF Policy 6-022 - Campus Design & Construction Program
- USF Policy 6-035 – Abandoned Vehicles
- USF Policy 10-503 – Use of University Space for Class or Class Related Activities
- USF Policy 30-016 - Student Events Management
- USF Policy 30-023 – Alcohol Policy

## HISTORY

**Date Approved:** Feb. 13, 2017
**Substantively Amended:** (none)
**Technically Amended:** Jan. 23, 2024, Jun. 28, 2023, Sept. 7, 2022, Apr. 10, 2018, Aug. 31, 2017, May 9, 2017
**Biennial Review:** Jan. 30, 2023
**Other:** Jul. 1, 2020 (Consolidation)