UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMPA BAY STUDENTS FOR A DEMOCRATIC SOCIETY, VICTORIA HINCKLEY, SABA INDAWALA, VICKY TONG, and YUNQING ZHENG,

Plaintiffs,

v. CASE NO. 8:25-CV-02752-SDM-AAS

RHEA LAW, MELISSA GRAHAM, and DANIELLE MCDONALD,

Defendants.
_________________________________/

**DEFENDANTS' CORRECTED MOTION TO DISMISS SECOND AMENDED COMPLAINT**[1]

Defendants Rhea Law, Melissa Graham, and Danielle McDonald, by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby move to dismiss the Second Amended Complaint for failure to state a claim. The grounds upon which the instant motion is based are set forth in the following Supporting Memorandum of Law.

---

[1] The instant motion corrects three scrivener's errors contained in the last paragraph on page 4 and footnote no. 2 below.

# SUPPORTING MEMORANDUM OF LAW

## II.

## ARGUMENT

### A. Legal Standard

Under Rule 12(b)(6), Federal Rules of Civil Procedure, a complaint should be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554, 127 S.Ct. 1955, 1964-65, 167 L.Ed. 2d 929 (2007) (quotations and citation omitted). Moreover, "the Court is not required to accept as true a legal conclusion merely because it is labeled a 'factual allegation' in the complaint.'" *McGinity v. TracFone Wireless, Inc.*, 5 F. Supp. 3d 1337, 1339 (M.D. Fla. 2014); *see also Oxford Asset Mgmt. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2022) ("[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal").

Even when sufficiently pleaded, a claim is subject to dismissal if it is "facially implausible." *Stuart v. U.S.,* 529 Fed. Appx. 992, 994 n.2 (11th Cir. 2013). If a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quotations and citation omitted). "[W]here the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but has not shown, that the pleader is entitled to relief." *Id.* at 1950.

**B. <u>Count I Fails To State A Claim</u>**

This Court has already determined that each of the USF policies challenged by the plaintiffs is a reasonable time, place, and manner restriction. [Doc. 29, January 9, 2026 Order, p. 22]. It also determined that the USF policies were content-neutral and therefore did not need to be the least restrictive or least intrusive means to serve their purposes [*Id.*]. This Court further concluded that "no USF policy or disciplinary action 'directly penalized' any First Amendment right." [*Id.* at p. 46].

The defendants were not under any obligation to ignore USF's pre-existing policies, plaintiffs' history of non-compliance with those policies, or plaintiffs' failure to abide by the terms of the disciplinary actions taken against them because of the content of plaintiffs' expression. The Second Amended Complaint alleges no facts --- as opposed to conclusions --- that the defendants took any actions because of the content of plaintiffs' expressions. There are no factual allegations --- as opposed to conclusions ---that the defendants selectively enforced the USF policies.[2] The Second Amended Complaint alleges no facts --- as opposed to conclusions --- demonstrating a causal connection between plaintiffs' speech and defendants' actions. The defendants simply enforced pre-existing University policies, which this Court has found to be reasonable time, place, and manner restrictions.

In short, Count I fails to plausibly allege that the defendants violated the plaintiffs' constitutional rights. *See Jackson v. BellSouth Telecommunications,* 372 F.3d 1250, 1271 (11th Cir. 2004) ("[p]leading must be something more than an ingenious academic exercise in the conceivable" and "unsupported conclusions of

[2] There is no allegation in the Second Amended Complaint, for example, that anyone expressing the same views as the plaintiffs, and who is not associated with an expelled organization, has been denied access to the USF Campus.

law or of mixed law and facts are not sufficient to withstand dismissal under Rule 12(b)(6)") (internal quotations and citations omitted). Therefore, Count I should be dismissed.

### C. The Second Amended Complaint Still Fails to State A Claim Against Defendant Law

In its Order dated January 9, 2026, this Court concluded that the plaintiffs had failed to state a claim under Section 1983 against defendant Rhea Law: "By failing to plead facts showing that 'through [her] own individual actions, [President Law] has violated the Constitution,' the plaintiffs failed to state a claim under 42 U.S.C. § 1983…. The same fatal defect applies to each claim against President Law." [Doc. 29, Order, p. 21].

In this Second Amended Complaint, the plaintiffs added the following allegations regarding defendant Law:

1. The Tampa Jewish Community Centers & Federation ("JCC") published a letter "thanking Defendant Law for meeting with them on multiple occasions and 'work[ing]' with them to address 'anti-Israel activity on campus by what it called "anti-Israel students and agitators.'" [Doc. 30, Second Amended Complaint, ¶ 34].

2. "Upon information and belief," "Defendant Law did maintain 'ongoing contact with several key stakeholder groups,' meet with the Deputy Consul General for Florida at the request of the JCC, and take other measures to suppress 'anti-Israel activity' in USF's campus at the request of the JCC --- including the campaign to silence and expel TBSDS for engaging in such 'anti-Israel activity.'" [Doc. 30, Second Amended Complaint, ¶ 39].

3. It changed an earlier allegation that Cindy Deluca stated that defendant Law "wanted[3]" a written explanation of the incident to defendant Law "had ordered" a written explanation of the incident. [Doc. 30, Second Amended Complaint, ¶ 51].

4. "Defendants Law, Graham, and McDonald conspired to rid USF and its forums of TBSDS's speech and viewpoint, and then acted to carry out that conspiracy through a combination of unconstitutional and discriminatory methods, including outright bans on speech by and association with TBSDS, prior restraints on future association with the national SDS network, and sham conduct proceedings that relied on guilt-by-association to expel and suspend students for

[3] [Doc. 30, Second Amended Complaint, ¶ 43]

their protected association and activism." [Doc. 30, Second Amended Complaint, ¶ 64].

5. "Defendant Law sent Tampa riot police to the MLK Plaza." [Doc. 30, Second Amended Complaint, ¶ 113].

6. Other attendees suffered additional injuries due to the police aggression directed by Defendant[ ] … Law." [Doc. 30, Second Amended Complaint, ¶ 116].

These new allegations also fall far short of the requirement of pleading that Law's individual actions violated the Constitution. While the Second Amended Complaint alleges that defendant Law "ordered" a written explanation of an incident, there is no allegation that she dictated the details of the written explanation. Ordering a written explanation of a campus incident is not an unconstitutional act.

There is also now an allegation that defendant Law sent Tampa "riot police" to a student demonstration. However, that act alone is also not an unconstitutional act. There is no allegation that defendant Law directed any unconstitutional activities of the police at the demonstration.

There is no allegation that defendant Law created the USF policies the plaintiffs claim are unconstitutional. There is no allegation that defendant Law directed that the USF policies be applied selectively to the plaintiffs. Nor is there any allegation that she directed different application of the USF policies to other organizations or students with different viewpoints. There is no allegation that defendant Law was involved in the disciplinary proceedings against the plaintiffs or that she steered or influenced the outcome of those proceedings.[4]

In short, the Second Amended Complaint fails to allege that defendant Law personally participated in any alleged violation of the plaintiffs' rights. *See Ashcroft v. Iqbal,* 556 U.S. at 676, 129 S.Ct. 1937, 1947 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, violated the Constitution"). Therefore, the claims against defendant Law should be dismissed.

[4] As discussed *infra* at pp. 13-18, the bald allegations that defendant Law "conspired" with Graham and McDonald "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 556.

## D. Count II Fails To State A Claim

### 1. Count II is barred by the Eleventh Amendment.

Count II attempts to allege claims against the individual defendants in their official capacities, which effectively are claims against USFBOT. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).

The Eleventh Amendment bars suits against a state or its agencies absent waiver or Congress' legitimate exercise of its power to abrogate that immunity. *Welch v. Texas Dep't. of Highways & Public Transp.*, 483 U.S. 468, 472, 107 S.Ct. 2941, 97 L.Ed. 2d 389 (1987).

Congress has not abrogated Eleventh Amendment immunity for claims brought under 42 U.S.C. § 1983. *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1301 (11th Cir. 2007). Moreover, Florida has not waived its sovereign immunity or consented to be sued in damage suits brought pursuant to Section 1983. *Gamble v. Florida Dep't of Health & Rehab. Serv.*, 779 F.2d 1509 (11th Cir. 1986).

The *Ex Parte Young* doctrine creates a narrow exception to Eleventh Amendment immunity and allows federal courts to "grant[ ] prospective injunctive relief to prevent a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed. 2d 371 (1985).

The "*Ex Parte Young* doctrine requires the allegation of an ongoing and continuous violation of federal law." *Summit Med. Assocs., P.C. v. Pryor,* 180 F.3d 1326, 1338 (11th Cir. 1999). The doctrine applies only when a violation of federal law by a state official is ongoing, as opposed to cases in which federal law has been violated at one time or over a period of time in the past. *Nicholl v. A.G.*, 769 Fed. Appx. 813, at *4 (11th Cir. 2019).

The doctrine is inapplicable when a plaintiff seeks to adjudicate the legality of past conduct. *Id.; Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). When a plaintiff has alleged "only a single, past statutory violation and does not assert any likelihood that he will be subjected to a similar violation in the future," he does not have standing to seek prospective relief allowed under *Ex Parte Young*. *See Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1996).

Most of the events alleged in the Second Amended Complaint occurred more than a year ago. Plaintiffs allege that TBSDS was expelled from the USF campus on July 23, 2024 [Doc. 30, Second Amended Complaint, ¶ 131] and that plaintiff Victoria Hinckley ("Hinckley") was expelled in June 2024. [Doc. 30, Second Amended Complaint, ¶ 22].

Plaintiff Vicky Tong ("Tong") was issued a trespass warning which expired on December 12, 2025. [Doc. 30, Second Amended Complaint, ¶¶ 180-81]. Plaintiff Saba Indawala ("Indawala") was placed under interim suspension on October 1, 2024. [Doc. 30, Second Amended Complaint, ¶ 163]. October 1, 2024 was the date of TDSDS's last activities on the USF campus. [Doc. 30, Second Amended Complaint, ¶ 148].

The Second Amended Complaint contains added allegations that new plaintiff Yunqing Zheng ("Zheng"), who has not been associated with or spoken in affiliation with TBSDS on USF's campus since April 30, *2024* and desired to participate in the TBSDS events on the USF campus in September and October 2024, but "*was* chilled" from doing so. [Doc. 30, Second Amended Complaint, ¶¶ 125, 166]. However, this does not plausibly allege that Zheng, or any of the plaintiffs, is likely to be impacted by USF's allegedly unconstitutional policies in the future such that they would have Article III standing to obtain injunctive relief. *See Williams v. Reckitt Benchiser LLC,* 65 F.4th 1243, 1253 (11th Cir. 2023) ("before a court may grant the plaintiff injunctive relief, the plaintiff must separately establish a threat of 'real and immediate,' as, opposed to 'conjectural or hypothetical,' future injury").

Therefore, Count II is barred by Eleventh Amendment sovereign immunity and should be dismissed with prejudice. *Pinkston v. Univ. of S. Fla. Bd. of Trustees,* 2016 U.S. Dist. LEXIS 75359 (M.D. Fla. June 9, 2016); *DeBose v. Univ. of South Fla.*, 178 F.Supp. 3d 1258, 1267 (M.D. Fla. 2016).

**2. <u>Count II fails to allege a policy or custom.</u>**

The *Monell* policy or custom requirement is applicable irrespective of whether the remedy sought in a Section 1983 case is money damages or prospective relief such as an injunction or a declaratory judgment. *Los Angeles County, Cal. v. Humphries,* 562 U.S. 29, 131 S.Ct. 447, 178 L. Ed. 2d 460 (2010); *Wheeler v. Crews,* 2015 WL 7731396, at *4 (N.D. Fla. Oct. 26, 2015).

To attempt a quick fix, the Second Amended Complaint switched the allegations in plaintiffs' Amended Complaint that defendants Law, McDonald and Graham were each a "decisionmaker" to allegations that each defendant was a "policymaker." <u>Compare</u> Doc. 17, Amended Complaint, ¶¶ 20-22 with Doc. 30, Second Amended Complaint, ¶¶ 27-29.

However, this attempt at expedient re-labeling is insufficient. "When deciding whether an official had final policymaking approval, we look to state and local positive law as well as custom and usage having the force of law." *Phoenix*

*Ridge Ga. TC, LP v. City of Atlanta,* 2025 U.S. App. LEXIS 6149, at *8 (11th Cir. Mar. 17, 2025) (*per curiam*), *citing Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1292 (11th Cir. 2004).

"The fact that a particular official --- even a policymaking official has discretion in the exercise of particular functions does not, without more, give use to municipal liability based on an exercise of that discretion." *Pembauer v. City of Cincinnati,* 475 U.S. 469, 481-82, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). A governmental employee is considered a "final policymaker" for official liability purposes "only if his decisions have legal effect without further action by the governing body, and if the governing body lacks the power to reverse the . . . employee's decision." *Holloman ex rel. Holloman v. Harland, supra* at 1292 (citation omitted); *Maschmeier v. Scott,* 269 Fed. Appx. 941, 943 (11th Cir. 2008); *Scala v. City of Winter Park,* 116 F.3d 1396, 1399 (11th Cir. 1997).

Here, plaintiffs fail to allege that any state or positive law or custom or usage provided defendants Law, McDonald and Graham with final policymaking authority on behalf of USF. To the contrary, Article IX, Section 7(c) of the Florida Constitution provides that each "local constituent university shall be administered by a board of trustees consisting of thirteen members dedicated to the purposes of

the state university system"); *see also Solomon v. Shands Teaching Hosp. & Clinics, Inc.*, 353 So. 3d 677, 679 (Fla. 1st DCA 2022) ("[t]he UF Board of Trustees is responsible for setting UF policies in accordance with state law and the Board of Governors regulations"); *Florida Carry, Inc. v. University of North Florida*, 133 So. 3d 966, 979 (Fla. 1st DCA 2013) (Wetherell, J. specially concurring) ("[e]ach of the twelve individual state universities is 'administered' by a board of trustees (BOT) that is responsible for providing policy-direction, oversight and strategic planning for the university").

Accordingly, Florida law provides that each Florida state university's board of trustees is authorized to administer and govern the state university. The Second Amended Complaint fails to allege any facts demonstrating that the USF Board of Trustees lacked the authority to review or reverse any decision made by defendants Law, McDonald or Graham. In short, Count II of the Second Amended Complaint fails to allege a policy or custom. Therefore, it should be dismissed. *See Phoenix Ridge Ga. TC, LP v. City of Atlanta, supra* at *9-10 (affirming dismissal of § 1983 claim because city council had to approve contracts or decisions not to execute contracts); *see also McCants v. City of Mobile*, 752 Fed. Appx. 744, 748 (11th Cir. 2018) (affirming dismissal of claims against city because plaintiffs "fail to

support their municipal liability claims with anything other than 'a formulaic recitation of the elements of the cause of action'") (citation omitted) .

### E. The Second Amended Complaint Still Fails to State A Claim For Conspiracy

In its January 9, 2026 Order, this Court concluded that "[a]part from failing to allege any fact supporting the 'inference' that USF discriminate[s] against Palestinian students and their associates and allies, 'the complaint fails to allege an agreement either between the defendants or between any defendant and any so-called 'megadonor.'" [Doc. 29, Order, p. 40].

Plaintiffs attempted to remedy that deficiency by adding in the Second Amended Complaint the following formulaic and conclusory allegations regarding a conspiracy:

1. "From that point forward, Defendants conspired to rid USF and its forums of TBSDS and its speech and viewpoint." [Doc. 30, Second Amended Complaint, ¶ 63].

2. "Defendants Law, Graham, and McDonald conspired to rid USF and its forums of TBSDS's speech and viewpoint, and then acted to carry out that conspiracy through a combination of unconstitutional and discriminatory methods, including outright bans on speech by an association with TBSDS, prior

restraints on future association with the national SDS network, and sham conduct proceedings that relied on guilt-by-association to expel and suspend students in their protected association and activism." [Doc. 30, Second Amended Complaint, ¶ 64].

3. "Defendants Law, McDonald, and Graham each formed an agreement amongst themselves and with co-conspirators (including the JCRC, among others) to prevent Plaintiffs from associating, assembling, and speaking on campus, with the purpose of suppressing this viewpoint." [Doc. 30, Second Amended Complaint, ¶ 242].

4. "Defendants' agreement to the conspiracy is evident from the e-mail conversations following Freddi Kaden's complaint about TBSDS's fliers, from Defendant Law's extensive meetings and collaboration with the JCC and JCRC, and from each Defendant 's subsequent conduct and acts in pursuit of their unlawful purpose of violating Plaintiffs' expressive and associative rights." [Doc. 30, Second Amended Complaint, ¶ 243].

In the first place, plaintiffs' allegation regarding "sham conduct proceedings" flies in the face of the Court's determination that USF provided constitutionally adequate due process to the plaintiffs. [Doc. 29, January 9, 2026

Order, pp. 31-34]. Similarly, plaintiffs' allegations regarding "outright bans on speech by an association with TBSDS" and "prior restraints on future association with the national SDS association" fly in the face of this Court's determination that each of the challenged USF policies is a reasonable time, place, and manner restriction. [Order, pp. 22-29].

Because plaintiffs fail to state any underlying constitutional claim, they cannot state a claim for conspiracy to violate those constitutional rights. *Christman v. Holmes*, 449 Fed. Appx. 869, 873 (11th Cir. 2011) ("given that Christman's complaint did not allege an underlying constitutional issue, it necessarily failed to allege a § 1983 conspiracy"); *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2005) ("to sustain a conspiracy action under § 1983 … a plaintiff must show an underling actual denial of [his] constitutional rights").

Moreover, as this Court noted in its January 9, 2026 Order: "[T]he linchpin for conspiracy is an agreement, which presupposes communication …." "It is not enough to simply aver in the complaint that a communication existed." [Doc. 29, Order, p. 39] (citations omitted).

Here, the Second Amended Complaint does not allege any communication among the defendants to violate plaintiffs' constitutional rights. Nor does it allege

any such communication between any of the defendants and any other alleged co-conspirator. Nor does the Second Amended Complaint contain any factual allegations supporting the bald assertion that the defendants "formed an agreement." *See Iqbal,* 556 U.S. at 678 (the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"); *Twombly,* 550 U.S. at 565 (allegations of conspiracy must be supported by allegations of fact that support "a plausible suggestion of conspiracy" not merely a "possible" one).

Moreover, the plaintiffs' allegations about the e-mail conversations following Freddi Kaden's complaint about TBSDS's fliers and defendant Law's "extensive meetings and collaboration with the JCC and JCRC" do not support a reasonable inference that the defendants entered into a conspiracy to violate the plaintiffs' constitutional rights. *See Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949, *quoting Twombly,* 550 U.S. at 556 ("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). *See also Blackston v. Schook & Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir. 1985) ("an inference based on speculation and conjecture is not reasonable"); *Daniels v. Twin Oaks Nursing Home,*

692 F.2d 1321, 1324 (11th Cir. 1982) (all inferences must be reasonable and not merely a guess or possibility).

A plaintiff "must make particularized allegations that a conspiracy exists." *Hansel v. All Gone Towing Co.*, 132 Fed. Appx. 308, 309 (11th Cir. 2005). "Vague and conclusory allegations suggesting a § 1983 conspiracy are insufficient to withstand a motion to dismiss." *Id.; Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). *See also C.H. by Hilligoss v. School Board of Okaloosa County, Florida,* 2019 U.S. Dist. LEXIS 169142, at *63 (N.D. Fla. Sept. 30, 2019) ("[c]onclusory allegations of an agreement, without any factual basis to make the allegation plausible, are insufficient to state a conspiracy claim").

The Second Amended Complaint offers no specifics regarding when or how an agreement was reached between any of the defendants, the substance of any conspiratorial communication, the substance of any agreement between the defendants or how the defendants conspired with one another. In short, the Second Amended Complaint consists of nothing more than vague, conclusory statements that fail to even minimally show that the defendants entered into, or engaged in, a conspiracy.

Plaintiffs' conclusory allegations are not sufficient to state a claim. *Hansel, supra* (affirming grant of motion to dismiss conspiracy claim because conclusory allegations with no factual support are insufficient to state a conspiracy claim); *Shell v. U.S. Dep't of Hous. And Urban Dev.*, 355 Fed. Appx. 300, 307 (11th Cir. 2009) (conspiracy claim dismissed based on "vague and conclusory" allegations); *Albra v. City of Fort Lauderdale,* 232 Fed. Appx. 885, 891 (11th Cir. 2007) (affirming Rule 12(b)(6) dismissal of conspiracy claim); *Fulwood v. Fed. Bureau of Prisons,* 568 Fed. Appx. 753, 757 (11th Cir. 2014); *Alhallaq v. Radha Soami Trading, LLC,* 484 Fed. Appx. 293, 297 (11th Cir. 2012).

## IV.

## CONCLUSION

For the foregoing reasons, the Second Amended Complaint should be dismissed for failure to state claims upon which relief can be granted.

## LOCAL RULE 3.01(g) CERTIFICATION

On February 20, 2026 counsel for USFBOT sent an email correspondence to plaintiffs' counsel outlining the issues addressed above and the intent to file the instant motion. Plaintiffs oppose the relief sought herein.

Respectfully submitted,

/s/ Richard C. McCrea, Jr.

Richard C. McCrea, Jr.
Florida Bar No. 351539
Email: mccrear@gtlaw.com
Cayla M. Page
Florida Bar No. 1003487
Email: pagec@gtlaw.com
GREENBERG TRAURIG, P.A.
101 E. Kennedy Boulevard
Suite 1900
Tampa, FL 33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on February 23, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

Walker Smith IV
LEGALSMITHS CONSULTING GROUP, P.A.
283 Cranes Roost Boulevard, Suite 111
Altamonte Springs, FL 32701
Walker@LegalSmithsConsulting.com
LegalSmithsConsulting@Gmail.com

Colin Poirot, Esquire
(*Pro Hac Vice*)
2603 Oak Lawn Avenue, Suite 300
Dallas, TX 75219
Cpoirot.law@gmail.com

Andrew B. Stoll
300 Cadman Plaza West
12th Floor
Brooklyn, NY 11201
astoll@stollglickman.com

/s/ Richard C. McCrea, Jr.
Attorney